JOHN J. OSMAR v. CROSLAND-OSMAR, INC., A CORPORATION

No. 7926SC91

(Filed 20 November 1979)

Contempt of Court § 3.1— motion denied by trial court—action immediately brought in S.C.—indirect contempt

The trial court properly determined that the individual defendant was in contempt of court when the court had denied defendant's motion that the receiver of defendant corporation be required to notify attorneys in S.C. that the individual defendant was the owner of commissions on the sale of real estate which had been listed by defendant corporation, and the individual defendant immediately went outside the jurisdiction of the N.C. courts and brought an action in the S.C. courts against the S.C. attorneys claiming the commissions, thereby interfering with and failing to cooperate fully with the receiver in the performance of his duties as required by the court's earlier consent judgment.

---

---

APPEAL by J. Miller Crosland from *Snepp, Judge*. Order entered 31 August 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 September 1979.

J. Miller Crosland was adjudged as being in indirect criminal contempt of court under the provisions of G.S. 5A-11(a)(3) reading as follows:

(a) Except as provided in subsection (b), each of the following is criminal contempt:

. . .

(3) Wilful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution.

The case arose out of the following facts:

J. Miller Crosland and John J. Osmar each owned 1000 shares of the outstanding common stock in the defendant corporation. On 28 November 1977, John J. Osmar filed a petition in the superior court requesting that a receiver be appointed for said corporation alleging that the directors were deadlocked and requesting that the corporation be dissolved and liquidated. A consent order was entered 19 December 1977 by Judge Hasty, pursuant to G.S. 55-125(a), appointing Samuel A. Wilson III as receiver for the corporation.

The order set out guidelines for the parties, among which were the following:

. . .

2. The defendant corporation Crosland-Osmar, Inc., and its employees, agents and other representatives are hereby ordered and directed to turn over to and deliver immediate possession and control of all of the property and assets of the defendant corporation, including all books and records, and fully to cooperate with the receiver in the performance of his duties hereunder.

. . .

II. *Status of claims and notification to and claims by creditors.*

1. All persons, firms, and corporations are hereby restrained and enjoined from interfering in any manner with the property or assets of the corporation or with the receiver in the exercise of his duties; and they are hereby further restrained and enjoined from suing said receiver or foreclosing upon any property of the defendant corporation except by permission first obtained from this court.

J. Miller Crosland contends that he resigned as an officer and director of the corporation on or about 9 December 1977; however, the notice in the record of his resignation is dated 17 April 1978 and was filed 25 April 1978.

Among the purported assets of the corporation at the time of the appointment of the receiver was an expired listing on certain lands in South Carolina known as the PTL Club property. The listing had expired 6 October 1977. It would seem that this expired contract had been retained by Mr. Crosland in his personal files.

On 13 December 1977, prior to the order of receivership, Mr. Crosland in conjunction with two other realtors offered the lands to a proposed purchaser in South Carolina, and a new contract of sale was executed 17 December 1977. The last contract showed Miller Crosland Company as the realtor making the offer and had substituted the names of the heirs in lieu of the executor of an estate as one of the parties.

On 16 February 1978, the receiver moved the court for an order requiring J. Miller Crosland to show cause why he should not be held in wilful contempt of the court for failure to go to the office of an accountant employed in this matter to explain certain bookkeeping entries and for his failure to turn over the records in connection with the sale of the PTL property. The order entered in this cause compelled Mr. Crosland to go to the office of the accountant, explain the entries and turn over his records, from which was discovered the last named sales agreement for the PTL Club property. The answer filed by Mr. Crosland denied that the receiver or the corporation had any interest in the sale of the South Carolina property.

Correspondence between the receiver and Mr. Crosland revealed that the receiver claimed commissions from the sale as

an asset of the corporation, and Mr. Crosland denied any rights in the receiver to the commissions.

A motion was filed by Mr. Crosland on 6 April 1978 stating that the receiver had contacted the closing attorneys in South Carolina requesting that no real estate commission be paid to Mr. Crosland, and further contending this defendant corporation had no interest in the real estate commission; and moving the North Carolina courts for an order directing the receiver to notify the closing attorney in South Carolina that he was entitled to the commissions. The motion filed by Mr. Crosland was denied by Judge Griffin on 19 April 1978.

On the day following, Mr. Crosland brought a suit in South Carolina against the closing attorney claiming the commissions. The receiver was not made a party to the suit but did appear and testify regarding his claim to the commissions as receiver. The court advised the receiver that it intended to sign an order granting the funds to Mr. Crosland but would withhold signing the order from Thursday, 28 April 1978, until Monday, 1 May 1978, so that the receiver could take any appropriate action in the North Carolina courts to protect his interest. Thereafter, the commissions were paid to Mr. Crosland.

On 28 April 1978 the receiver filed a motion in the cause setting forth the facts in the South Carolina case and requesting that the court issue an order directing J. Miller Crosland to pay into the office of the clerk of superior court the moneys he received from the sale of the South Carolina property. The motion and order in this cause were not served; thereafter, a like motion and order were filed 4 May 1978 and served on Mr. Crosland on 8 May 1978.

In the meantime, prior to service of the said order, Mr. Crosland had received and disposed of the commissions received from the sale of the South Carolina lands.

On 17 August 1978 Judge William T. Grist issued an order directing J. Miller Crosland to appear before the court on 28 August 1978 and show cause why he should not be held in contempt of court for his wilful failure to comply with the orders of the court entered on 19 December 1977, 28 April 1978 and 4 May 1978. At the trial of the case before the Honorable Frank Snepp,

the judge found facts, made conclusions of law and entered a judgment finding the defendant in indirect criminal contempt of the court, having wilfully disobeyed, resisted and interfered with the lawful order of the court in violation of G.S. 5A-11(a)(3). Among the findings of fact by the presiding judge was the following:

> 16. J. Miller Crosland with full knowledge of the claim of the Receiver herein as to the proceeds of the commission referred to wilfully and without legal justification . . . prevented the Receiver in this court from making an ordinary determination as to whether or not the said commission was an asset of the defendant in violation of the Order entered by Judge Fred H. Hasty on December 19, 1977, that all employees and agents of the defendant deliver possession and control of all the property and assets of the defendant to the Receiver and to cooperate fully with the Receiver in the performance of his duties.

After making the findings of fact and conclusions of law, the said judge entered an order requiring J. Miller Crosland to be imprisoned in the Mecklenburg County jail for a term of 15 days; that he pay a fine of $500; and that the clerk certify a copy of the order to the bankruptcy judge, the North Carolina Real Estate Licensing Board and the South Carolina Real Estate Licensing Board.

Mr. Crosland appealed.

*Reginald L. Yates, for the defendant appellant.*

*No brief for plaintiff appellee.*

HILL, Judge.

Two questions were raised by J. Miller Crosland on appeal:

1. Did the trial judge err in finding that J. Miller Crosland wilfully and without legal justification violated the order of Judge Fred Hasty entered 19 December 1977?

2. Did the acts of J. Miller Crosland constitute indirect criminal contempt?

The evidence is undisputed that the second sales contract for the sale of the PTL property was entered into prior to 19 December 1977, the date of the appointment of the receiver. Although Mr. Crosland contended that he resigned as an officer and director effective 9 December 1977, there was no notice before the court prior to 25 April 1978, the date on which Mr. Crosland gave formal notice to both the corporation and Mr. Samuel A. Wilson III as receiver. Mr. Crosland had retained the records concerning the South Carolina property in his personal files and had refused to divulge the contents thereof until ordered by the court to do so several weeks after the appointment of the receiver. By doing so, he failed to fully cooperate with the receiver in the performance of his duties to determine what were the assets of the corporation.

Although the order entered 19 December 1977 prohibited any person, firm or corporation from interfering in any manner with the property or assets of the corporation or with the receiver in the exercise of his duties and further restrained and enjoined persons, firms and corporations from suing the receiver or foreclosing upon any property of the defendant corporation except by permission first obtained from this court, Mr. Crosland attempted to do indirectly that which he could not do directly. In spite of the direct order of the North Carolina superior court denying Mr. Crosland's motion that the receiver be required to notify the closing attorney in South Carolina that Mr. Crosland was the owner of the commissions, he immediately went outside the jurisdiction of the North Carolina courts and brought a suit to accomplish the same result.

No longer was the dispute over the commission one between interested parties on equal footing. The order of 19 April 1978 denying Mr. Crosland's motion made it clear that the receiver had some claim to the proceeds. No determination on the merits had been made. Mr. Crosland certainly had the right to claim property that he alleged was his, but Mr. Crosland also had a duty to cooperate with the receiver. Mr. Crosland had signed the consent order of 19 December 1977, and by its terms it applied to him. Once the North Carolina court determined that the receiver had a claim to the proceeds, Mr. Crosland was bound to comply with the order. Admittedly, Mr. Crosland did not make the receiver a party to the South Carolina action, but the very act of instituting the

action constituted interference and a failure to fully cooperate with the receiver in the performance of his duties. At this point, it is evident that Mr. Crosland was in violation of G.S. 5A-11(a)(3).

The question before this Court is not whether Mr. Crosland is entitled to the commissions but rather whether there was a wilful disobedience, resistance to, or interference with the court's lawful process, order, direction or instructions or its execution. We hold that there was.

Had Mr. Crosland paid the commissions so received into court and then sought permission of the court to sue the receiver to determine ownership thereof, perhaps the judgment of this court would have been different. Rather, he chose to bypass the North Carolina court by going to South Carolina and doing indirectly what he had been ordered not to do directly.

For the reasons set out above, the order entered by the Honorable Frank W. Snepp is in all respects

Affirmed.

Judges VAUGHN and ERWIN concur in the result.