STATE OF NORTH CAROLINA v. MARK ANTHONY KEY

No. COA06-499

(Filed 17 April 2007)

### 1. Attorneys— abandonment of client—criminal contempt— jurisdiction

The trial court had subject matter and personal jurisdiction to enter a judgment of criminal contempt against an attorney who abandoned his client. Although the attorney contended that the client's matter had previously been resolved and that there was nothing for the judge to hear at the hearing at which he did not appear, there was ample evidence in the record to support the trial court's findings as to what transpired. The trial court's findings are binding on appeal if supported by competent evidence.

### 2. Attorneys— abandonment of client—criminal contempt— motion to dismiss denied

The trial court did not err by denying a motion to dismiss a contempt proceeding against an attorney who abandoned a client. The attorney was present at the courthouse and left, the family appointment to which he pointed was later in the day and had nothing to do with his abandonment of his client, and he did not give a specific and reasonable notice of his intent to withdraw based upon nonpayment of fees. It is also clear that his conduct interfered with the business of the Superior Court; a matter which could have been disposed of within five minutes resulted in a significant expenditure of time and effort by the court, its staff, and its officers over a two-day period.

### 3. Attorneys— abandonment of client—criminal contempt— no bias by judge

A show cause order in a contempt proceeding against an attorney did not demonstrate bias by the judge and a need for recusal ex mero motu, assuming the issue was properly preserved for appeal. Considered in its entirety, the amended show cause order reflects a careful and conscientious effort to apprise defendant of the specific instances of conduct that were alleged to be the basis of contempt, and the statutes and rules that may have been violated. The order does not reflect actual or perceived bias.

**4. Contempt— criminal—sanction of attorney**

A contempt sanction imposed on an attorney for abandoning a client that consisted of a jail sentence suspended upon certain conditions, including not practicing in the courts of that county for one year, was not unreasonable. It was within the limits of the law and defendant did not argue that it constituted an abuse of discretion. The order for attorney discipline which was also entered is the subject of a separate appeal.

Appeal by defendant from judgment entered 16 November 2005 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 12 December 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Mark A. Key, pro se defendant-appellant.*

STEELMAN, Judge.

The abandonment of a client outside the courtroom prior to a probation violation hearing by an attorney, together with his subsequent refusal to represent the client constituted willful "substantial interference" with the business of the court and supported the trial court holding the attorney in contempt of court.

Mark Anthony Key ("Key") is an attorney licensed to practice law in the State of North Carolina. On 8 August 2005, Key appeared before Judge Abraham Penn Jones in the Superior Court of Wake County, representing Tammy Faircloth ("Faircloth") on two probation violations. At the time of the hearing, Faircloth was served with a third probation violation, for absconding supervision, and was taken into custody for that violation. Key thought that all three probation violations had been resolved before Judge Jones on 8 August 2005. However, Judge Jones' written order did not dispose of the absconder violation. The notice of the absconder violation set the matter for hearing on 12 September 2005.

Faircloth and Key appeared before Judge Stafford G. Bullock on 12 September 2005 on the absconder violation. Key appeared at the hearing as attorney for Faircloth and did not in any manner limit his representation. When Judge Bullock refused to give Key assurances that he would follow a recommendation of the probation officer, Key moved to continue Faircloth's case. This motion was granted,

and the hearing was rescheduled for 10 October 2005. Following the 12 September 2005 hearing, Key advised Faircloth that he was charging her an additional $200 fee for representing her on the absconder violation.

In preparation for the 10 October 2005 hearing, Key issued a subpoena for a probation officer from Cumberland County to be present at the hearing. Key signed the subpoena as Faircloth's attorney. On 10 October 2005, the absconder violation was calendared before Judge Thomas D. Haigwood. Faircloth and Key met in the hall outside of the courtroom. Key demanded his $200 fee. Faircloth did not have the money. Key then released the probation officer from the subpoena, after he had driven from Fayetteville to Raleigh for the hearing, advised him that he had not been fully retained, and would not represent Faircloth. Key left the Wake County Courthouse without advising Faircloth that he would not represent her. Rather, he left it to the probation officer to advise Faircloth. When advised of this, Judge Haigwood instructed the courtroom clerk to call Key and tell him that his presence was required in court to resolve Faircloth's absconder violation. Key told the clerk that he had a parent-teacher conference that afternoon and was unavailable. Judge Haigwood agreed to continue the matter until 9:30 a.m. on 11 October 2005. When this was communicated to Key, he adamantly stated that he did not represent Faircloth, and "I don't see where the Judge has the authority to tell me to be there whenever I haven't been paid or retained in this case." Key then inquired of the clerk, what would the judge "do if I don't show up?" The clerk advised him that the judge would probably issue a show cause order or an order for arrest. Key responded, "Well, he doesn't have the authority, and I don't give a s— what he does." This terminated the telephone conversation.

Faircloth's matter came on before Judge Haigwood on 11 October 2005, with Key present. Judge Haigwood found that Key made a general appearance in the absconder violation case by continuing the case on 12 September 2005 and issuing a subpoena for the scheduled 10 October 2005 hearing. He then continued Faircloth's case and directed that Key appear before the Senior Resident Superior Court Judge for the Tenth Judicial District to show cause why he should not be subject to disciplinary action and/or punished for contempt. Judge Haigwood placed the case before Judge Donald W. Stephens because of an earlier incident involving Key in September 2005. This hearing was set for 31 October 2005.

Following receipt of this order, Judge Stephens issued an amended show cause order, which set forth in detail the basis for the alleged criminal contempt, and also advised Key that there was probable cause to believe that his conduct may subject him to discipline for violations of the Revised Rules of Professional Conduct for Attorneys. The amended order set the matter for hearing before Judge Stephens on 14 November 2005.

As a result of the hearing on 14 November 2005, Judge Stephens found Key guilty of criminal contempt of court and sentenced him to thirty days in the Wake County jail. This sentence was suspended for eighteen months, and Key was placed on probation on condition that he not violate any law of this State, not speak profanely to any court official, and not appear as an attorney in any matter in the District or Superior Courts of Wake County for one year.

Judge Stephens entered a separate order of attorney discipline for violations of the Revised Rules of Professional Conduct. Key filed separate appeals from the two orders. This appeal pertains only to criminal contempt.

## I: Jurisdiction

[1] In his first argument, Key contends that the trial court lacked subject matter jurisdiction and personal jurisdiction to enter the judgment finding him in contempt of court because Faircloth's absconder violation was resolved before Judge Jones on 8 August 2005, and there was nothing for Judge Haigwood to hear on 10 October 2005. We disagree.

If a trial court's finding is supported by competent evidence in the record, it is binding upon an appellate court, regardless of whether there is evidence in the record to the contrary. *State v. Phillips*, 151 N.C. App. 185, 188, 565 S.E.2d 697, 700 (2002). In this case, there is ample evidence in the record to support the trial court's findings as to what transpired on 8 August 2005, 12 September 2005 and 10 October 2005.

Regardless of whether Key believed that Faircloth's absconder violation was resolved on 8 October 2005, evidence shows that Key was aware after that date that the matter was not resolved. Judge Jones' order arising out of the 8 August 2005 hearing did not dispose of the absconder violation. The evidence shows that Key made a general appearance on behalf of Faircloth at the 12 September 2005 hearing before Judge Bullock and sought a continuance. At that hearing,

Key certainly knew that the matter was not resolved. Further, in preparation for the 10 October 2005 hearing, Key signed and issued a subpoena for a probation officer from Fayetteville as attorney for Faircloth. This evidence supports the findings in Judge Stephens' order that the absconder violation was not resolved before Judge Jones, and was pending before Judge Haigwood on 10 October 2005.

Key's argument is essentially that this Court should accept his testimony that the absconder violation was resolved before Judge Jones. Where there is competent evidence supporting the findings of fact of the trial court, this Court cannot reweigh the evidence and make its own findings, but is bound by the trial court's findings. *See Phillips*, 151 N.C. App. 185, 565 S.E.2d 697. We find Key's argument on jurisdiction to be disingenuous at best, and without merit.

## II: Denial of Key's Motion to Dismiss

**[2]** In his second argument, Key argues that the trial court erred in denying his motion to dismiss the contempt proceedings. We disagree.

On a hearing for criminal contempt, the State must prove all of the requisite elements under the applicable statute, beyond a reasonable doubt. In this case, Key was noticed in the show cause order for two specific instances of conduct: (1) "falsely representing to the court, in violation of G.S. 5A-11(a)(2), that he did not represent the defendant, Tammy Faircloth, in a probation matter"; and (2) "intentionally failing to appear and remain, in violation of G.S. 5A-11(a)(7), at the date and time set for the aforesaid probation hearing to represent his client[.]" Judge Stephens' judgment held defendant in contempt of court based only upon a violation of N.C. Gen. Stat. § 5A-11(a)(7).

This statute defines the following as criminal contempt: "[w]illful or grossly negligent failure to comply with schedules and practices of the court resulting in substantial interference with the business of the court." N.C. Gen. Stat. § 5A-11(a)(7) (2005). The proper standard of review on a motion to dismiss based on insufficiency of the evidence is the substantial evidence test. "The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense." *State v. Jones*, 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993) (citing *State v. Mercer*, 317 N.C. 87, 96, 343

S.E.2d 885, 890 (1986)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990) (quotations omitted). If there is substantial evidence of each element of the charged offense, the motion should be denied. *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984).

Key first argues that all of his actions on 10 October 2005 were "legally justifiable and excusable" and that the trial court erred in holding him in contempt. In support of his argument he cites the case of *State v. Chriscoe*, 85 N.C. App. 155, 354 S.E.2d 289 (1987). In *Chriscoe*, this Court overturned the trial court's finding of contempt. A witness in a criminal case was to be back in court at 9:30 a.m. She was to be picked up by her mother at 8:30 a.m. The witness' mother overslept, and when she did not arrive, the witness became concerned and went to her mother's residence to check on her. As a result, the witness arrived at court over one hour late. This Court held that under these facts, the witness' actions were not willful or grossly negligent under N.C. Gen. Stat. § 5A-11(a)(7). Key contends that as the witness in *Chriscoe*, he had to attend to a family matter, a conference with his daughter's teacher, and that this was adequate justification for his not returning to court on 10 October 2005.

Key misapprehends the basis of the trial court's finding of criminal contempt. He was not held in contempt for failing to return to court on 10 October 2005, but rather for failing to appear at the hearing on the absconder violation and abandoning his client. Key was present at the courthouse at the time the case was scheduled for hearing and then walked out. The conference with his daughter's teacher was later in the afternoon and had nothing to do with his abandonment of Faircloth. When Judge Haigwood learned of the conference, Key was directed to appear the next morning.

Key next argues that because his client had not paid his fee, he was justified in withdrawing from representation of Faircloth in the absconder violation, citing the case of *Smith v. Bryant*, 264 N.C. 208, 141 S.E.2d 303 (1965). We hold that Key's reliance upon this opinion is misplaced. *Bryant* does state the general rule "that the client's failure to pay or to secure the payment of proper fees upon reasonable demand will justify the attorney in refusing to proceed with the case." *Id.* at 211, 141 S.E.2d at 305-6 (citation omitted). However, Key ignores the remaining language of Justice Sharp's opinion, which is the most frequently cited portion:

Nevertheless, this does not mean that an attorney of record can walk out of the case by announcing to the court on the day of the trial that he has withdrawn because he has not been paid. An attorney not only is an employee of his client but also is an officer of the court. This dual relation imposes a dual obligation. To the client who refuses to pay a fee the attorney must give specific and reasonable notice so that the client may have adequate time to secure other counsel and so that he may be heard if he disputes the charge of nonpayment. To the court, which cannot cope with the ever-increasing volume of litigation unless lawyers are as concerned as is a conscientious judge to utilize completely the time of the term, the lawyer owes the duty to perfect his withdrawal in time to prevent the necessity of a continuance of the case. (citation omitted).

*Id.* at 211, 141 S.E.2d at 306.

In this case, Key violated the basic precepts set forth in *Bryant,* 264 N.C. 208, 141 S.E.2d 303. He walked out on his client on the date of the hearing, and he failed to give specific and reasonable notice of his intent to withdraw based upon non-payment of fees. The law concerning the entry and withdrawal of an attorney in a criminal case is specifically set forth in Article 4 of Chapter 15A of the General Statutes. Under N.C. Gen. Stat. § 15A-141(2), an attorney enters a criminal proceeding when he appears without limiting the extent of his representation. Key did just that at the 12 September 2005 hearing. His duties to Faircloth were thus defined by N.C. Gen. Stat. § 15A-143:

An attorney who enters a criminal proceeding without limiting the extent of his representation pursuant to G.S. § 15A-141(3) undertakes to represent the defendant for whom the entry is made at all subsequent stages of the case until entry of final judgment, at the trial stage.

*Id.* (2005). N.C. Gen. Stat. § 15A-144 provides that the court may allow an attorney to withdraw from a criminal case for "good cause." It is clear that an attorney's failure to appear in court, thus interfering with the court's schedule, may be the basis for criminal contempt under N.C. Gen. Stat. § 5A-11(a)(7). *See Lomax v. Shaw,* 101 N.C. App. 560, 400 S.E.2d 97 (1991) (stating that "[t]he trial judge has the power to hold a party in contempt for willful or grossly negligent failure to comply with schedules and practices of the court resulting in substantial interference with the business of the court"); *see also In re Smith,* 45 N.C. App. 123, 133, 263 S.E.2d 23, 29, *rev'd on other*

*grounds*, 301 N.C. 621, 272 S.E.2d 834 (1980) (stating that generally, the "willful absence of an attorney from a scheduled trial constitutes contempt of court"). It is also clear that Key's conduct in this matter interfered with the business of the Superior Court of Wake County. *See Bryant*, 264 N.C. 208, 141 S.E.2d 303. The only question is whether this interference was substantial. We have reviewed the authorities cited by both appellant and appellee, and find that they provide little illumination on this question.

Substantial interference means that degree of interference with the court's business that is real, and not momentary or illusory. Substantial interference has been described as "wilful disobedience, resistance to, or interference with the court's lawful process, order, direction or instructions or its execution." *Osmar v. Crosland-Osmar, Inc.*, 43 N.C. App. 721, 727, 259 S.E.2d 771, 774 (1979) (citing N.C. Gen. Stat. § 5A-11(a)(3) (1978)).

Judge Stephens found that: "A probation matter which ultimately took the Court less than five minutes to resolve has been delayed for several days due entirely to Key's failure to appear as counsel, because, in his mind, he wasn't fully paid for his services." Key does not argue that this finding was not supported by the evidence, and it is thus binding on this Court. *See* N.C. R. App. P. 28(b)(6) (2005).

Thus, had Key acted properly in this matter, it could have been disposed of in less than five minutes. However, Key's actions, which he conceded in his testimony before Judge Stephens to have been wrong, resulted in the trial court expending considerable time and effort in tracking Key down and handling this case. When Faircloth appeared with no attorney before Judge Haigwood, he ascertained why Key had left the courthouse and then instructed the clerk to contact Key. The clerk testified to nine separate telephone calls that she made on the afternoon of 10 October 2005 in an attempt to get Key back to court to dispose of the absconder violation. She then reported her actions to Judge Haigwood who directed that everything be placed in the record. Judge Haigwood then had to continue the matter until the following morning. Mr. Porter, a probation officer from Cumberland County spent the afternoon of 10 October 2005 in the courtroom waiting for Key to return, and then was required to return to Wake County the following morning. At the hearing on 11 October 2005, Key vehemently denied that he had any duty to represent Faircloth, despite the fact that Judge Haigwood ruled that Key had in fact made a general appearance on behalf of Faircloth. Finally,

on the morning of 11 October 2005, Judge Haigwood continued Faircloth's probation violation, stating:

> I think it would be more appropriate for another Judge of the Superior Court to hear this matter so that there won't be any impression from anyone that whatever decision is made is based on anything that has transpired between Mr. Key and Ms. Clodfelter and myself and this Court.[1]

Key argues that the court was able to continue to transact other business on 10 and 11 October 2005, and therefore there was no "substantial interference with the business of the court." Whether the court was able to transact other business is not the test of substantial interference. Key's conduct unnecessarily resulted in the court, its staff and its officers expending significant time and effort in an attempt to get Faircloth's case resolved over a two day period. We hold that this was "substantial interference" within the intent and meaning of N.C. Gen. Stat. § 5A-11(a)(7). This argument is without merit.

### III: Recusal

[3] In his third argument, Key contends that Judge Stephens' amended show cause order demonstrated that he was biased against Key and should have recused himself from hearing the contempt matter, *ex mero motu*. We disagree.

In the cases of *In re Robinson*, 37 N.C. App. 671, 247 S.E.2d 241 (1978), and *In re Dale*, 37 N.C. App. 680, 247 S.E.2d 246 (1978), this Court held that language in a show cause order stating, "[y]ou have negligently and willfully failed to perfect the appeal or to seek appellate review through other possible means," constituted a prejudgment by the issuing judge of defendant's conduct. We thus held that the trial judge should have granted defendant's motions to recuse.

We first note that this case is distinguishable from both *Robinson* and *Dale* in that Key made no motion to recuse Judge Stephens.[2] This

---

1. Judge Haigwood's reference is to a prior incident that occurred on 23 September 2005, where Key, in a telephone conversation overheard by Ms. Clodfelter referred to the "stupid m***** f***** in the courtroom." When admonished by Ms. Clodfelter, Key cursed her with regard to what he would and would not do. This incident resulted in Judge Haigwood having a conference with a court reporter present. To avoid embarrassing Key, this was conducted in chambers.

2. We further note that in criminal cases, a motion to disqualify a judge must be in writing, accompanied by supporting affidavit(s) and filed at least five days before the call of the case for trial. *See* N.C. Gen. Stat. § 15A-1223.

assignment of error has not been properly preserved and is dismissed. *See State v. Love*, 177 N.C. App. 614, 926-27, 630 S.E.2d 234, 243 (2006); N.C. R. App. P. 10(b)(1).

Even assuming that this issue were properly before us, Key's arguments have no merit. The amended show cause order must be considered in its entirety, not judged upon the single paragraph to which Key directs us. The relevant portions of the amended show cause order are as follows:

There is probable cause to believe that Attorney Mark Key is subject to being held in criminal contempt for:

(1) falsely representing to the Court, in violation of G.S. 5A-11(a)(2), that he did not represent the defendant, Tammy Faircloth, in a probation matter (04-CRS-108515) scheduled for hearing on October 10, 2005 for which hearing Attorney Key had issued a subpoena to a witness from Fayetteville, North Carolina on which he signed such subpoena as attorney for the defendant; and

(2) intentionally failing to appear and to remain, in violation of G.S. 5A-11(a)(7), at the date and time set for the aforesaid probation hearing to represent his client, Tammy Faircloth, until the matter was resolved or until he was released by the Court.

There is also probably cause to believe that Attorney Mark Key is subject to attorney discipline for the aforesaid conduct and for the additional attorney misconduct of cursing the courtroom clerk on two occasions, which cursing is more particularly described in the transcript attached to the first show cause order and in the additional transcript attached to this amended order.

This conduct is in violation of Rule 3.5(a)(4)(B) of the Revised Rules of Professional Conduct for Attorneys which prohibits lawyers from "engaging in undignified or discourteous conduct that is degrading to a tribunal." Mr. Key's conduct is also in violation of Rule 3.3(a)(1) for making false material statements to the Court and in violation of Rule 1.16 by abandoning his client without reasonable notice to the client and without permission of the Court.

The first two paragraphs are prefaced by the words, "[t]here is probable cause to believe . . ." The third paragraph, of which Key

complains, is not so prefaced. However, the third paragraph recites no specific instance of conduct. Rather, it commences with "[t]his conduct," which refers back to the specific conduct described in the first two paragraphs, which contained the probable cause preface.

Read as a whole, the amended show cause order does not reflect any actual or perceived bias on the part of Judge Stephens. Rather, it reflects a careful and conscientious effort to apprise Key of the specific instances of conduct that were alleged to be the basis of contempt, and the statutes and rules that they may have violated.

Even assuming this argument is preserved before this Court, it is without merit.

## IV: Sanction

[4] In his fourth and final argument, Key argues that the sanction imposed by the court was unreasonable. We disagree.

Key's assignment of error cited as the basis of this argument reads as follows: "The court's ruling in paragraph 22 on the grounds that there was insufficient evidence to support it, the findings of facts does [sic] not support it and it was contrary to law." While it is highly questionable whether this assignment of error bears any relationship to Key's argument, we nonetheless address it.

Key argues that under the case of *N.C. State Bar v. Talford*, 356 N.C. 626, 576 S.E.2d 305 (2003) the trial court could not impose a sanction of suspension or disbarment without findings of fact "keyed to: (1) the harm or potential harm created by the attorney's misconduct, *and* (2) a demonstrable need to protect the public." *Id.* at 637-38, 576 S.E.2d at 313 (emphasis in original).

Key fundamentally misapprehends the nature of this particular appeal. This is an appeal from a judgment of criminal contempt under Chapter 5A of the General Statutes. While Judge Stephens also entered an order of attorney discipline, that is the subject of a separate appeal, *In re Key*, 182 N.C. App. 714, 643 S.E.2d 452 (2007). The cited language from *Talford* is inapplicable to our review of a judgment of criminal contempt.

Under N.C. Gen. Stat. § 5A-12, the court could have sentenced Key to up to thirty days imprisonment and a fine of five hundred dollars ($500.00).

It has long been the accepted rule in North Carolina that within the limits of the sentence authorized by law, the character and the

extent of the punishment imposed is within the discretion of the trial court and is subject to review only in cases of gross abuse.

*State v. Goode*, 16 N.C. App. 188, 189, 191 S.E.2d 241, 241-2 (1972) (citation omitted). Defendant argues in his brief, without any supporting authority, that the sanction imposed was "unreasonable and inappropriate." However, he makes no argument whatsoever that the suspended sentence imposed constituted an abuse of discretion or gross abuse on the part of the trial court. We further note that Key makes no argument that the special conditions of his probation were not reasonably related to his rehabilitation under N.C. Gen. Stat. § 15A-1343(b1)(10).

An abuse of discretion is a decision unsupported by reason or one so arbitrary that it could not be the result of a reasoned decision. *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). We discern no abuse of discretion, and clearly no gross abuse of discretion on the part of the trial judge in sentencing defendant and imposing conditions of probation.

This assignment of error is without merit.

AFFIRMED.

Judges WYNN and HUNTER concur.