TYSON, Judge.
 

 *481
 
 Phillip Entzminger ("Respondent") appeals from an order of discipline, which suspended his license to practice law for two years, with possibility of a stay of the balance of the suspension after six months. We affirm the order appealed from in part, reverse in part, and remand for further hearing on the appropriate discipline to be imposed.
 

 I. Background
 

 Respondent was employed as an assistant district attorney ("ADA") in Pitt County when he entered a dismissal of a driving while impaired ("DWI") charge. Haleigh Aguilar was arrested for DWI and driving after underage consumption of alcohol in December 2014. Aguilar's case was one in a series of cases in which the Pitt County District Attorney's Office "employed a novel and unusual procedure to obtain grand jury presentments and indictments in pending impaired driving cases."
 

 *644
 

 State v. Baker
 
 , --- N.C. App. ----, ----,
 
 822 S.E.2d 902
 
 , 903 (2018). Prior to Aguilar's initial trial and disposition in district court, the district attorney obtained a presentment and indictment from a grand jury in March 2017 and removed the case to superior court. Aguilar's case was set for trial during the 11 September 2017 superior court criminal session.
 

 Aguilar married a United States Marine Corps service member, who was then stationed in Hawaii. Aguilar moved to Hawaii while her charges were pending. Aguilar's attorney, Leslie Robinson, Esq. contacted Hailey Bunce, the ADA assigned to Aguilar's case, on 8 August 2017 to request the trial be given priority to be heard due to his client having to return to North Carolina from Hawaii. Robinson also requested to be provided advance notice of a possibility of a continuance, and indicated he would oppose a motion to continue if the State did not call Aguilar's case for trial during the scheduled week of 11 September 2017.
 

 Bunce indicated to Robinson that Aguilar's case was assigned to Respondent. In her reply email, Bunce stated the district attorney's office was unable to guarantee priority and advised Robinson to contact Respondent directly with any additional questions. Respondent was
 
 *482
 
 copied on Bunce's emailed response. Robinson then sent his same calendar and notice requests directly to Respondent.
 

 On 25 August 2017, Respondent replied to Robinson and indicated the trial of Aguilar's case had been assigned to ADA Brandon Atwood. Respondent also indicated to Robinson he could make no promises concerning the priority of Aguilar's case and noted pending felonies would probably have priority for disposition over this case. Robinson then sent the same priority requests previously sent to Bunce and Respondent to ADA Atwood.
 

 Aguilar flew back from Hawaii to North Carolina for trial and was present for calendar call on Monday, 11 September 2017. Two other DWI cases were called prior to Aguilar's case. Her case was called for trial on Wednesday, 13 September 2017.
 

 Officer Sinclair, Aguilar's breathalyzer test administrator, was an essential State witness. On 5 September 2017, she had informed a DWI Victim Witness Assistant within the district attorney's office of her unavailability as a witness for court due to training during the week of 11 September 2017. No ADA was informed of this scheduling issue. Officer Sinclair received an email from the district attorney's office on 11 September 2017, requesting her attendance in court. Officer Sinclair replied and again informed them of her conflict and being unavailable at training out of town. No subpoena was issued for Officer Sinclair to be present in court.
 

 Atwood became aware of Officer Sinclair's impending absence sometime on 11 September 2017. Someone in the district attorney's office sent Respondent to "take over" the Aguilar case on Wednesday, 13 September 2017. Atwood informed Respondent of Officer Sinclair's unavailability. Neither Atwood nor Respondent informed Robinson of the officer's unavailability, nor did Respondent disclose his intention to move to continue the case.
 

 After lunch on 13 September 2017, Respondent appeared before Resident Superior Court Judge, Jeffery Foster, and moved for a continuance in the Aguilar matter. Robinson objected and presented the history and circumstances of the case and his notices of scheduling with the district attorney's office.
 

 The following colloquy occurred with Respondent, Atwood, and Judge Foster:
 

 THE COURT: Well, why didn't you call this case first?
 

 *483
 
 [Respondent]: There were felonies on the docket is my understanding.
 

 THE COURT: No, there weren't. They were all pled out last week.
 

 [Respondent]: I think when the calendar was made, your Honor, I think you could make -
 

 THE COURT: But we knew Monday that, that wasn't the case is what I'm saying, so why didn't we go ahead and do this?
 

 ...
 

 THE COURT: When did y'all know that this officer was going to be unavailable?
 

 [Respondent]: I found out today, your Honor, at approximately 12:15. I was -
 
 *645
 
 THE COURT: When did the officer know?
 

 MR. ATWOOD: I was made aware that the chemical - that the officer in the case was in Huntersville, I was made aware Monday.
 

 After determining no subpoena was present in the court file or had been issued for Officer Sinclair, the trial court denied the State's motion to continue. The State dismissed the DWI charge against Aguilar and accepted her plea on the driving after consuming while underage charge.
 

 The next day, Respondent completed a document entitled "Prosecutor's Dismissal and Explanation" which included Respondent's version of the reason for the State's dismissal of the DWI:
 

 This 2014 case was set in superior court. The analyst was unavailable due to training with the Huntersville Police Department (North Carolina). The State made a motion to continue which was denied. Oddly enough, the judge indicated the DWI case should have been set further up in calendar because defendant was from Hawaii. All defendants simply need to move out of state after being charged with a crime if that is the case.
 

 ....
 

 *484
 
 [The State] could have proved all the elements but a superior court judge denied the motion to continue for lack of an analyst to show the .12.
 

 Judge Foster saw and reviewed the dismissal document and spoke with Officer Sinclair concerning her absence for training and learned the true history, including her prior notice of her unavailability and absence as a witness on trial day. After consulting with other judges, Judge Foster "made the decision to begin this action." Judge Foster felt Respondent's comments on the dismissal document "called the Court into disrepute," and were "disrespectful," "inappropriate," and "unnecessary."
 

 Judge Foster entered an order for Respondent to show cause why he should not be held in contempt or disciplined. The order alleged Respondent: (1) showed "a disregard for the dignity of the Court"; (2) "demonstrated undignified and discourteous conduct"; (3) "[m]isled the Court by making statements he knew or should have known to be false"; and, (4) "[a]cted to create a false record."
 

 The Office of Counsel of the State Bar was appointed to prosecute the matter. Respondent filed a motion to recuse Judge Foster, which was granted by the trial court.
 

 A hearing was held in two phases: the first phase was to determine whether Respondent had violated the Rules of Professional Conduct or was guilty of criminal contempt, and, if so, the second phase was to determine the appropriate discipline. The trial court found Respondent was not guilty of criminal contempt, but found he had violated Rules 3.3(a)(1), 4.4(a), 8.2(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 After hearing additional evidence concerning sanctions, the trial court suspended Respondent's license to practice law for two years. Respondent was provided the opportunity to request a stay of the suspension after six months had elapsed and after compliance with various requirements.
 

 Respondent entered notice of appeal. The trial court denied his motion to stay the order of discipline. This Court granted Respondent's motion for writ of
 
 supersedeas
 
 and stayed enforcement of the order of discipline until the disposition of this appeal.
 

 II. Jurisdiction
 

 An appeal of right lies to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).
 

 *485
 

 III. Issues
 

 Respondent argues the trial court erred by finding and concluding: (1) Respondent had made false statements of material fact regarding when he had learned of Officer Sinclair's unavailability, which misled the trial court; (2) Respondent's statement that "there were felonies on the docket is my understanding" created a material misrepresentation that Respondent knew or should have known was false; and, (3) Respondent had refused to acknowledge the wrongful nature of his conduct and his apology to the Court was "unavailing."
 

 *646
 

 IV. Standard of Review
 

 Respondent asserts this Court's standard of review on an order of discipline is the whole record test. He cites
 
 N.C. State Bar v. Livingston
 
 , --- N.C. App. ----, ----,
 
 809 S.E.2d 183
 
 , 188 (2017), for support. The order in
 
 Livingston
 
 was entered by the State Bar Disciplinary Hearing Commission.
 

 Id.
 

 The North Carolina State Bar (the "State Bar") asserts the appropriate standard of review is whether competent evidence supports the findings of fact, since this is a matter brought by a court in the exercise of its inherent disciplinary power over officers of the court and members of the bar.
 
 In re Key
 
 ,
 
 182 N.C. App. 714
 
 , 717,
 
 643 S.E.2d 452
 
 , 455 (2007) ;
 
 State v. Key
 
 ,
 
 182 N.C. App. 624
 
 , 626,
 
 643 S.E.2d 444
 
 , 447 (2007).
 

 Respondent argues the proceedings before us are more like a disciplinary hearing, as compared with the proceedings in the
 
 Key
 
 cases, which were prosecuted by the local district attorney and the State Bar. We find this argument unconvincing.
 

 As in the
 
 Key
 
 cases, this matter was initiated by a judge of the superior court pursuant to the court's inherent authority to discipline attorneys and under N.C. Gen. Stat. § 5A-15(a). The appointment of counsel of the State Bar to prosecute this matter, given Respondent's employment by the district attorney, rests within the authority of the court, and does not remove the proceeding from its authority. N.C. Gen. Stat. § 5A-15(g) (2017) ("The judge presiding over the hearing may appoint a prosecutor or, in the event of an apparent conflict of interest, some other member of the bar to represent the court in hearings for criminal contempt.").
 

 Our review of the trial court's findings of fact "is limited to whether there is competent evidence in the record to support the findings."
 
 In re Key
 
 , 182 N.C. App. at 717, 643 S.E.2d at 455. "It is irrelevant that the evidence would also support contrary findings of fact."
 
 Id.
 
 at 717-18, 643 S.E.2d at 455.
 

 *486
 
 "Where the trial judge sits as the trier of the facts, his findings of fact are conclusive on appeal when supported by competent evidence. ... The appellate court cannot substitute itself for the trial judge in this task."
 
 Gen. Specialities Co. v. Nello L. Teer Co.
 
 ,
 
 41 N.C. App. 273
 
 , 275,
 
 254 S.E.2d 658
 
 , 660 (1979) (internal citations and quotations omitted).
 

 The trial court's conclusions of law, which must be supported by its findings of fact, are reviewed
 
 de novo
 
 .
 
 Couch v. Private Diagnostic Clinic
 
 ,
 
 146 N.C. App. 658
 
 , 664,
 
 554 S.E.2d 356
 
 , 361-62 (2001). Any sanctions imposed are reviewed on appeal for abuse of discretion.
 
 Id.
 
 at 664-65,
 
 554 S.E.2d at 362
 
 .
 

 V. Analysis
 

 The inherent power of Justices and Judges of the General Courts of Justice to discipline members of the Bar as officers of the court predates and remains more comprehensive than the statutory powers initially and subsequently provided by the General Assembly to the State Bar.
 
 Swenson v. Thibaut
 
 ,
 
 39 N.C. App. 77
 
 , 109,
 
 250 S.E.2d 279
 
 , 299 (1978). It is axiomatic that judges must rely upon the honesty and veracity of all witnesses and participants, and particularly the full disclosure and candor by members of the Bar, to be able to administer and render fair and impartial justice.
 
 See
 
 id.
 

 The trial court found and concluded Respondent's conduct during the Aguilar hearing, and its dismissal and aftermath, constituted grounds for discipline. Respondent challenges two of those conclusions of law. Respondent also challenges one finding of fact and conclusion concerning his apology.
 

 A. False Statement Concerning Officer Availability
 

 The superior court concluded:
 

 That [Respondent], by claiming to the Court to have learned of Officer Sinclair's unavailability only minutes before a hearing on the State's motion to continue and thereby misleading the Court by making a material misrepresentation of facts upon which the Court acted, violated Rule 8.4(c) and Rule 3.3(a)(1) of the Rules of Professional Conduct [.]
 

 Respondent asserts this conclusion "is not supported by the findings of fact and is greatly at odds with the evidence presented
 
 *647
 
 at the hearing." Based upon this Court's standard of review, we disagree.
 
 See
 

 In re Key
 
 , 182 N.C. App. at 717, 643 S.E.2d at 455.
 
 *487
 
 North Carolina's Rules of Professional Conduct provide: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer." N.C. R. Prof. Cond. Rule 8.4(c). Additionally, "[a] lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.C. R. Prof. Cond. Rule 3.3(a)(1).
 

 Here, competent evidence supports the superior court's disciplinary order. Respondent made two statements to Judge Foster regarding Officer Sinclair's availability that implicated rules 8.4 and 3.3. First, when Judge Foster questioned why Officer Sinclair was not present to testify, Respondent replied, "I could not tell you. Ms. Stroud in our office told me today that she was in Huntersville. And I want to say actually [she] has a job in Huntersville in training with the police department." Second, in response to Judge Foster's question to Respondent of when "did
 
 y'all
 
 know that [Officer Sinclair] was going to be unavailable," Respondent stated, "
 
 I
 
 found out today, your Honor, at approximately 12:15." (Emphasis supplied).
 

 Respondent's statements could be found to be a misrepresentation of facts that could have misled the court to believe the District Attorney's office had learned of Officer Sinclair's absence only that day. This potential to mislead the court may have prompted Atwood to interject and clarify Respondent's statements, by saying, "I was made aware Monday. [Officer Sinclair] contacted our office and said she is in training with the police department." During Respondent's hearing, Atwood was asked and clarified why he felt the need to interject:
 

 [COUNSEL]: And how did you take that question in terms of who he [Judge Foster] was asking?
 

 [ATWOOD]: Mr. Entzminger and I were both standing at the counsel table. Mr. Entzminger was - made the motion to continue, but since I was standing with him, Mr. Entzminger gave his answer and I felt it proper to clarify with my answer.
 

 [COUNSEL]: And why did you feel like after Mr. Entzminger said, well, I just found out at 12:15 that you needed to also answer?
 

 [ATWOOD]: To just be truthful with the Court at that point that I had - I had found out at some point Monday after
 
 *488
 
 10:18. I didn't want - I didn't want Judge Foster to think that we had just found out on Wednesday at whatever time it was. I wanted him to know that it was at some point Monday after 10:18, or whenever it was.
 

 Atwood made similar statements on cross-examination:
 

 [COUNSEL]: Mr. Atwood, you said you didn't want Judge Foster to think that you didn't know that Officer Sinclair was unavailable?
 

 [ATWOOD]: I just didn't want - I wanted to clarify Mr. Entzminger's answer, that it wasn't at - whatever his response was. I wanted to clarify with my knowledge.
 

 [COUNSEL]: You felt it needed clarification?
 

 [ATWOOD]: Correct. I just wanted Judge Foster to hear my answer.
 

 Judge Foster's question was directed at both Respondent and Atwood as representatives of both the district attorney's office and the State, and was inquiring when they or their office and the State had collectively learned of Officer Sinclair's unavailability. Respondent's answers were found to potentially have misled the court, a violation of the rules of professional conduct:
 

 an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer
 
 or in a statement in open court
 
 , may properly be made
 
 only
 
 when the lawyer knows the assertion is true or
 
 believes it to be true on the basis of a reasonably diligent inquiry
 
 . There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.
 

 *648
 
 N.C. R. Prof. Cond. Rule 3.3, cmt. 3 (emphasis supplied).
 

 Respondent's statement that
 
 he
 
 had just found out about Officer Sinclair's unavailability that afternoon could have been stated in Respondent's ignorance of the truth. However, this statement belied the truth that the district attorney's office was made aware of the officer's absence over a week before the case was to be called, no subpoena had been issued, and it had simply failed to act upon the information received until Respondent moved for a continuance and made representations to the court.
 

 *489
 
 Respondent's statements prompted the presiding judge to question whether Officer Sinclair was ignoring a subpoena, to check the court file, and to decide whether or not the court should issue a show cause order to appear. Ultimately, Respondent stated he could not make the representation Officer Sinclair had, in fact, been subpoenaed. After the court reviewed the court file for the presence of a subpoena and found none, it denied the State's motion to continue.
 

 The trial court found Respondent's answers did not disclaim knowledge, failed to disclose the true facts known by the State, led the court to question the duty and motivations of other actors and officers not present in court, and tended to shift the blame elsewhere for the State's essential witness not being present.
 

 The superior court found these statements violated Rules 8.4(c) and 3.3(a)(1) of the Rules of Professional Conduct. Competent evidence in the record supports these findings of fact. "It is irrelevant that the evidence would also support contrary findings of fact."
 
 In re Key
 
 , 182 N.C. App. at 717-18, 643 S.E.2d at 455. Respondent's argument is overruled.
 

 B. Statement Concerning the Docket
 

 When Judge Foster asked why the State did not call the Aguilar case for trial first, Respondent replied, "There were felonies on the docket
 
 is my understanding
 
 ." (Emphasis supplied). Judge Foster responded: "No, there weren't. They were all pled out last week." At the hearing, the trial court concluded it was a material misrepresentation that Respondent knew or should have known to be false, and this statement constituted another violation of Rule 8.4(a) of the Rules of Professional Conduct.
 

 The trial court's finding and conclusion that this statement was a material misrepresentation of fact to the court is not supported by competent evidence. Respondent relied upon the trial docket and calendar and represented facts he believed to be true, with the qualification of "in my understanding."
 

 Atwood, as Respondent's co-counsel, immediately supplemented the response:
 

 THE COURT: Well, why didn't you call this case first?
 

 [RESPONDENT]: There were felonies on the docket is my understanding.
 

 THE COURT: No, there weren't. They were all pled out last week.
 

 *490
 
 [RESPONDENT]: I think when the calendar was made, your Honor, I think you could make -
 

 THE COURT: But we knew Monday that, that wasn't the case is what I'm saying, so why didn't we go ahead and do this?
 

 [ATWOOD]: Your Honor, due to the number of motions that were in this particular case, we decided to place two cases in front of it that did not have the amount of motions to try to go ahead and knock out a couple of cases.
 

 Respondent's first response of "There were felonies on the docket is my understanding" was a truthful statement. At the disciplinary hearing, the trial court made factual findings that: (1) there were felonies originally calendared on the docket; (2) Respondent had no involvement in the Aguilar case "from 25 August 2017 until approximately 12:15 pm on 13 September 2017"; (3) Respondent "was not assigned to represent the State during the 11 September 2018 trial session and did not appear in court before Judge Foster during that session until he was summoned to by someone in the DA's office to appear in Superior Court"; and (4) Respondent "had not participated in any trial preparation regarding the case."
 

 A conclusion that Respondent engaged in conduct involving misrepresentation that reflected adversely on his fitness as a lawyer
 
 *649
 
 does not logically follow from the factual findings that Respondent had no involvement with the case between the time that the felonies on the docket were pled out and the moment before the hearing in question. Respondent, when specifically asked, recited a fact that was true at the last point of his knowledge, and also qualified it as such.
 

 No evidence supports a finding or conclusion that Respondent engaged in misrepresentations concerning the docket and the reasons for the order in which the Aguilar case was called for trial, in violation of N.C. R. Prof. Cond. Rule 8.4(c). This conclusion is reversed.
 

 C. Respondent's Apology
 

 Respondent asserts his apology to the court was "direct and unequivocal" and challenges Finding of Fact 5: "[Respondent's] apology to Judge Foster was unavailing," and the inclusion and consideration of "[Respondent's] refusal to acknowledge [the] wrongful nature of conduct" in the conclusions regarding discipline.
 

 Respondent argues the trial court improperly considered his defense raised during the adjudication phase against him during the dispositional
 
 *491
 
 phase, in violation of
 
 N.C. State Bar v. Rogers
 
 ,
 
 164 N.C. App. 648
 
 , 657,
 
 596 S.E.2d 337
 
 , 343 (2004). The findings of fact related to Respondent's conduct leading to and during the adjudication phase include:
 

 1. Entzminger sent an electronic communication to Judge Foster on 3 November 2017 stating, in part, that his language in the Aguilar dismissal was directed at Robinson [defense counsel], not Judge Foster.
 

 2. Entzminger's electronic communication to Judge Foster further states that there was no disrespect for Judge Foster's ruling in the filed dismissal.
 

 3. Leading up to and through the hearing in this matter, Entzminger continued to claim, in the face of clear evidence to the contrary, that the language in the "Prosecutor's Dismissal and Explanation" was not directed at Judge Foster.
 

 4. Entzminger did not apologize to Judge Foster at any point from the time he filed the "Prosecutor's Dismissal and Explanation" to the time of the hearing in this matter. Entzminger took the stand on the second day of the hearing, after the Court found that Entzminger had engaged in professional misconduct, and apologized to Judge Foster.
 

 Respondent is correct in arguing that an attorney may defend against charges of professional misconduct without his defense being used against him in the dispositional phase.
 
 See
 
 id.
 

 His assertion of his lack of an apology to Judge Foster prior to or during the adjudication hearing being held against him in determining the appropriate discipline is not supported by the findings.
 

 The trial court explicitly found that after being found to have engaged in unprofessional conduct. Respondent did, in fact, apologize to Judge Foster:
 

 Judge Foster, I apologize for my actions. The language that was put in the dismissal was inappropriate, should not have been there. It was - could have been seen as directed towards you, which it was not. I shall always yield gracefully to any ruling that you have. You should know the only reason that I have not been to you - the only reason why I have not been by your office, sat down in your office, the only reason I have not talked to you in the hallway has been under the advice of both counsel as well as those
 
 *492
 
 that I have asked since this began. I realize that when I sent you text messages, when I left you a phone message in order to set up a meeting, instead I should have just gone to your office. By the time I received counsel from others they said it was probably not a good idea. I wanted nothing more than to look at you and say I apologize for anything that I put in the dismissal. And I'm not just saying that just because here we are now. I'm really not. I was prepared to do this last Tuesday, I was prepared to do this last February, I was prepared to do this back at the end of September, before October the 2nd. I have always been prepared to do this. Yesterday if you would have been in court, in the afternoon you had to go somewhere, I would have said the same thing, that I deeply apologize to you. But more to the point I apologize to Mr. Walthall. I apologize to Mr. - the
 
 *650
 
 other Bar representative, I forget his name. And I apologize to Judge Blount. It is my actions that have brought us here today and I apologize for wasting the Court's time with something like this.
 

 Despite Respondent's explanations and assertions, the trial court found his apology lacking. Respondent admitted under cross-examination during the dispositional phase of his trial that at least part of the language from his order of dismissal could have been construed as being directed at Judge Foster's ruling on denying Respondent's motion to continue. Respondent's dismissal specifically states: "Oddly enough,
 
 the judge
 
 indicated the DWI case should have been set further up in the calendar because defendant was from Hawaii." (Emphasis supplied).
 

 The trial court included this finding of fact regarding discipline, which Respondent does not challenge and is binding upon appeal:
 

 14. Contrary to the overwhelming weight of the evidence presented at the hearing, Entzminger's continued attempts to maintain that the dismissal language was not directed at Judge Foster and that he meant no disrespect to Judge Foster by his conduct demonstrates Entzminger's refusal to acknowledge the wrongfulness of his conduct."
 

 "[U]nchallenged findings of facts are binding on appeal."
 
 N.C. State Bar v. Key
 
 ,
 
 189 N.C. App. 80
 
 , 87,
 
 658 S.E.2d 493
 
 , 498 (2008) (citing
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ).
 

 Competent evidence exists to support the challenged finding of fact, which, along with uncontested findings, supports the challenged
 
 *493
 
 conclusion of law. This Court does not find facts or "substitute itself for the trial judge."
 
 Gen. Specialties Co.
 
 ,
 
 41 N.C. App. at 275
 
 ,
 
 254 S.E.2d at 660
 
 . Respondent's argument is overruled.
 

 VI. Conclusion
 

 Competent evidence in the record supports the challenged findings of fact that Respondent had made false statements of material fact regarding when he had learned of Officer Sinclair's unavailability, which misled the trial court, and that Respondent had refused to acknowledge the wrongful nature of his conduct and his apology to the Court was "unavailing."
 
 In re Key
 
 , 182 N.C. App. at 717, 643 S.E.2d at 455. Those challenged conclusions of law are supported by the trial court's findings of fact and are affirmed.
 

 The trial court's conclusion of law that Respondent's statement that "there were felonies on the docket is my understanding" created a material misrepresentation that Respondent knew or should have known was false is a conclusion of law unsupported by competent evidence and is unsupported by the findings of fact. This conclusion is reversed.
 

 Respondent failed to challenge or argue the trial court's conclusion, or the findings of fact supporting it, that Respondent's filing of the dismissal violated Rules 8.4(d), 8.2(a), and 4.4(a) of the Rules of Professional Conduct and "constitute[d] grounds for discipline." See N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").
 

 The trial court's order for discipline is affirmed in part, reversed in part, and remanded for a new hearing on the disciplinary sanctions to be imposed.
 
 It is so ordered.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges BRYANT and ZACHARY concur.