STATE OF NORTH CAROLINA v. LESLIE MICHAEL KITCHENGS

No. COA06-941

(Filed 5 June 2007)

**1. Rape— statutory rape—motion to dismiss—sufficiency of evidence—penetration**

The trial court did not err by denying defendant's motion to dismiss the charge of statutory rape under N.C.G.S. § 14-27.7A(b) based on alleged insufficient evidence of penetration, because: (1) the victim's testimony involved more than her bare statement that she had sex with defendant; (2) the victim's testimony was corroborated by the victim's school principal who testified that the victim said she had sex with defendant and had contracted a sexually transmitted disease from him; (3) a deputy testified that defendant denied raping the victim based on the fact that he did not ask her to stay; and (4) a prosecuting witness is not required to use any particular form of words to indicate that penetration occurred.

**2. Jury— denial of request to view transcript—court's exercise of discretion based on time constraints**

The trial court did not err in a statutory rape case by denying the jury's request to look at the transcript and allegedly failing to exercise its discretion in deciding whether to grant the request, because: (1) the Supreme Court has held that instructing the jury to rely upon their individual recollections to arrive at a verdict means the trial court exercised its discretion and complied with the requirements of N.C.G.S. § 15A-1233(a); and (2) the record revealed the trial court consulted with the court reporter after receiving the jury's request, and the trial court's statements showed it chose not to provide a transcript based on time constraints associated with typing and printing an actual transcript.

**3. Evidence— prior crimes or bad acts—prior encounters with police**

The trial court did not err or commit plain error in a statutory rape case by allowing the State to question a deputy regarding defendant's prior encounters with police, because: (1) with regard to the statement concerning how the deputy knew who the victim was talking about, the State was required to show that defendant was the perpetrator and that the victim had identified

STATE v. KITCHENGS

[183 N.C. App. 369 (2007)]

defendant to the deputy; and (2) with regard to the statement concerning how the deputy identified defendant from a previous photo of defendant that the courthouse had, there was no possibility that the improper question affected the outcome of the trial when the court gave a curative instruction and defendant testified that he had been convicted of traffic violations and misdemeanor assaults.

Appeal by Defendant from judgment entered 8 February 2006 by Judge Jack W. Jenkins in Superior Court, Hyde County. Heard in the Court of Appeals 22 February 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.*

McGEE, Judge.

Leslie Michael Kitchengs (Defendant) was convicted of statutory rape on 8 February 2006 in violation of N.C. Gen. Stat. § 14-27.7A(b). The trial court sentenced Defendant to a minimum of sixty months and a maximum of eighty-one months in prison. Defendant appeals.

The State's evidence tended to show that on 31 March 2005, T.M., then thirteen years old, spent the night with her friend, K.K. T.M. testified she arrived at K.K.'s grandmother's house at approximately 7:00 p.m., and that Defendant, K.K.'s brother, arrived later. Defendant and his wife, Chrystal Kitchengs (Chrystal), asked T.M. to play cards with them in a bedroom on the second floor of the house. T.M. played cards for only a short time, but she remained in the room and "laid on the bottom of the bed." T.M. further testified that Defendant and Chrystal continued to play cards until Defendant told Chrystal to "get out[.]" Chrystal then left the room. Defendant's sister, Jessica, came into the room, asked what happened, and also left the room. T.M. then took her phone out to check the time. Defendant took T.M.'s phone and started kissing T.M. on her neck. T.M. told Defendant to stop, but did not "make any physical movements [or] try to push him off[.]" Defendant called T.M. a "punk" and told T.M. she was "scared[.]" T.M. said she was not scared and unzipped her pants. Defendant helped her pull down her pants and underwear. T.M. next testified:

[T.M.]: That's when I—I was laying down and that's when it happened.

[State]: That's when what happened?

[T.M.]: He took his thing out.

[State]: Did you have sex with the defendant then?

[T.M.]: Yes.

[State]: How long did it last?

[T.M.]: About five minutes.

[State]: What happened after it was over?

[T.M.]: Then I rolled over and I went to sleep.

[State]: Where were your clothes?

[T.M.]: I had put my clothes back on.

The following day, T.M. told K.K. what had happened. However, she did not tell her mother until several weeks later when she got into a fight with K.K. at school.

Rosemary Mann (Mann), the principal of T.M.'s school, testified that there was "a little bit of friction" between T.M. and K.K. at school on 18 April 2005. T.M. was "upset" so Mann took T.M. to Mann's office to "find out what was going on." T.M. told Mann that she had contracted a sexually transmitted disease from Defendant. Mann asked T.M. whether T.M. "[had] sex" with Defendant, and T.M. said that she did. The jury was instructed that this testimony was offered only to corroborate prior testimony. After T.M. told Mann that Defendant was approximately twenty-one years old, Mann was required to alert authorities, which she did by contacting the Department of Social Services (DSS). Mann also contacted T.M.'s mother. T.M.'s mother became upset and asked T.M.'s aunt to contact the Hyde County Sheriff's Department.

Deputy Tyree Carr (Deputy Carr), with the Hyde County Sheriff's Department, testified that he responded to the home of T.M.'s aunt on 18 April 2005. After receiving permission from T.M.'s mother to question T.M., Deputy Carr and a DSS social worker interviewed T.M. in Deputy Carr's patrol car. Deputy Carr testified that T.M. was crying so much he was unable to learn what had happened. During Deputy Carr's testimony, the following exchange occurred:

[Deputy Carr]: [T.M.] said Michael [did] something to her and kept crying and kept crying and it was unclear what he had done, you know.

[State]: When [T.M.] said Michael, were you aware who she was talking about?

[Deputy Carr]: Yes, sir.

[State]: How did you know who she was talking about?

[Deputy Carr]: I had previous encounters with him.

Defendant did not object to this testimony at trial. Later that evening, Deputy Carr took a written statement from T.M.

Deputy Carr testified that Defendant was arrested by the Washington County Sheriff's Department, and that he picked Defendant up from the Washington County authorities. During Deputy Carr's testimony, the following exchange occurred:

[State]: How did you identify [Defendant] as Leslie Michael Kitchengs?

[Deputy Carr]: I had a picture of him from a previous photo that our courthouse had.

Defendant objected, and the trial court sustained the objection and directed the jury to disregard "that last observation of the witness." Deputy Carr then testified he was able to identify Defendant by asking Defendant his date of birth and address. At the close of the State's evidence, Defendant moved to dismiss the charge. The trial court denied Defendant's motion.

Several witnesses testified for Defendant. Defendant's sister, Jessica, testified she was at her grandmother's house on the evening of 31 March 2005. Jessica testified she was present in the bedroom where Defendant, Chrystal, and T.M. were playing cards. Jessica said she left the room with Chrystal when Defendant told Chrystal to leave. Jessica said she and Chrystal went into the hallway outside the bedroom. Jessica testified that from the hallway, she could hear and see what was going on in the bedroom. Jessica testified that Defendant said he was going to sleep and that he asked T.M., when she left to go to bed, to tell Chrystal "to come in here." Jessica testified that T.M. never left the room, and that neither T.M. nor Defendant removed any clothing or discussed any sexual activity.

Chrystal also testified on behalf of Defendant. She testified that she, Defendant, and T.M. were playing cards on 31 March 2005, and that Jessica was watching. Chrystal and Defendant got into an argument and Chrystal left the room and sat in the hallway outside the door with Jessica. Chrystal testified that from where she was sitting in the hallway she could see the bed inside the room. She watched Defendant and T.M. play cards for approximately thirty minutes, and then saw Defendant go to sleep. Chrystal did not see any struggle between T.M. and Defendant.

K.K. also testified. She testified that on the night of 31 March 2005, she slept in her bedroom, which was straight down the hall from the room where T.M. and Defendant slept that evening. K.K. testified that she and T.M. were friends until about two weeks after 31 March 2005, when T.M. "told people in school that [T.M.] had sex with my brother[.]" K.K. testified that T.M. told her several versions of the events of 31 March 2005, but ultimately said "nothing happened at all."

Defendant also testified. Defendant stated he first met T.M. on 31 March 2005 at his grandmother's house. Defendant testified he returned from work at approximately 12:00 midnight, took a shower, had something to eat, and then began playing cards in his bedroom with Chrystal, Jessica, and T.M. While they were playing cards, Chrystal discovered Defendant was cheating and got into an argument with Defendant. Chrystal left the room and Defendant asked Jessica to go out after her. Defendant testified that he played cards with T.M. for two and a half to three hours, and then went to sleep. Defendant denied kissing, attempting to kiss, or having sex with T.M. at any time. On cross-examination, Defendant stated he had asked to see T.M.'s camera phone at some point and that he had played with the phone until the battery died. Defendant also admitted to prior convictions for "[t]raffic violations [and] misdemeanor assaults."

In rebuttal, the State recalled Deputy Carr, who testified that while transporting Defendant on 15 May 2005, Defendant had said, "I didn't rape that b——, cuz. I didn't tell her to stay."

At the close of all the evidence, Defendant renewed his motion to dismiss the charge against him. The trial court again denied Defendant's motion.

During deliberation, the jury sent a request to the trial court to "look at the transcript[.]" In the jury's absence, the trial court stated:

Let the record reflect that I have shown this [note] to the lawyers for both sides and I have consulted with the court reporter as well regarding transcripts, the manner in which transcripts are produced, the time constraints that would go along with producing a written transcript . . . that would be suitable for review by the jurors.

It is my belief based on that conversation with the court reporter and also after conferring with counsel that this is a request that simply cannot be honored, at least not today and it may take several days or perhaps even weeks before a transcript could be produced that would be suitable for review by the jurors.

Both sides indicated they "underst[ood], agree[d] and concur[red] that the production of a transcript under [those] circumstances [was] basically not an option[.]" The trial court asked if either party objected to the trial court's proposed response, and neither party objected. The jury was returned to the courtroom, and the trial court stated:

First of all, the Court is not going to provide the jurors with a transcript. Let me read an instruction to you regarding this. We are unable to comply with your request because of the time constraints associated with typing and printing an actual transcript. Let me also read one other instruction to you. It is your duty as jurors to listen to the evidence when presented and to recall the evidence during your deliberations.

After the jury resumed its deliberations, the trial court again asked if either party had any objection to the way the trial court had handled the jury's request. Neither party objected.

[1] Defendant first argues that the trial court erred in denying his motions to dismiss the statutory rape charge because the State failed to offer substantial evidence of penetration.

When ruling on a motion to dismiss, the trial court must consider

all of the evidence, whether competent or incompetent, . . . in the light most favorable to the state, and the state is entitled to every reasonable inference therefrom. Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. In considering a motion to dismiss, it is the duty of the [trial] court to ascertain whether there is substantial evidence of each essential element of the offense charged. Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (internal citations omitted).

Defendant was indicted under N.C. Gen. Stat. § 14-27.7A(b) (2005), which requires that the State prove a defendant "engage[d] in vaginal intercourse or a sexual act with another person who [was] 13, 14, or 15 years old and the defendant [was] more than four but less than six years older than the person, except when the defendant [was] lawfully married to the person." " '[V]aginal intercourse' in a legal sense is proven if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male." *State v. Robinson*, 310 N.C. 530, 533-34, 313 S.E.2d 571, 574 (1984). The State alleged in the indictment that Defendant engaged in vaginal intercourse with T.M.

Defendant contends that the State failed to prove the element of vaginal intercourse, which was required to convict Defendant. Defendant argues that our appellate courts have never found testimony that a defendant and a prosecuting witness "had sex" to be sufficient to prove vaginal intercourse without additional clarifying testimony.

First, we conclude that the testimony relevant to this analysis involves more than T.M.'s bare statement that she had sex with Defendant. During her testimony, T.M. stated: (1) that Defendant helped T.M. pull her pants and underwear down; (2) that she was "laying down[;]" and (3) that Defendant "took his thing out." T.M. also answered "[y]es" to the State's inquiry as to whether T.M. and Defendant then had sex. Further, T.M. stated that the incident took about five minutes. T.M.'s testimony was corroborated by the testimony of Mann. Mann testified she asked T.M. whether T.M. had sex with Defendant and T.M. stated that she did. Mann also testified that T.M. claimed to have contracted a sexually transmitted disease from Defendant. Also, during Deputy Carr's testimony on rebuttal, he testified that Defendant denied "rap[ing]" T.M.

We also note that a prosecuting witness is not required to use any particular form of words to indicate that penetration occurred. *State v. Ashford*, 301 N.C. 512, 514, 272 S.E.2d 126, 127 (1980). While we encourage the State to clarify the testimony of a witness, we note the tendency of our appellate courts to permit a wide range of testimony

to indicate penetration. *See, e.g., id.* at 513-14, 272 S.E.2d at 127 (holding that testimony that the defendant had "sex" and "intercourse" with the prosecuting witness was sufficient evidence of penetration); *State v. Howard,* 158 N.C. App. 226, 230-31, 580 S.E.2d 725, 729, *disc. review denied,* 357 N.C. 465, 586 S.E.2d 460 (2003) (holding that testimony referencing the "sexual activity between the victim and [the] defendant as sex, intercourse, or sexual intercourse" was sufficient evidence of penetration); *State v. Summers,* 92 N.C. App. 453, 456, 374 S.E.2d 631, 633-34 (1988), *disc. review denied,* 324 N.C. 341, 378 S.E.2d 806 (1989) (holding that the eleven-year-old victim's testimony that the defendant "put his 'private' in her 'private' between her legs" to be sufficient). Our standard of review requires us to view the evidence in the light most favorable to the State and we cannot conclude, in light of the above testimony, that the State failed to meet its burden of showing substantial evidence of penetration. Thus, the trial court did not err in denying Defendant's motions to dismiss.

**[2]** Defendant next argues the trial court erred by denying the jury's request to "look at the transcript." Specifically, Defendant contends that the trial court erred by failing to exercise its discretion in deciding whether to grant the request.

N.C. Gen. Stat. § 15A-1233(a) (2005) provides:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The [trial court] in [its] discretion, after notice to the prosecutor and [the] defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In [its] discretion the [trial court] may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

"It is within the [trial] court's discretion to determine whether, under the facts of a particular case, the transcript should be available for reexamination and rehearing by the jury." *State v. Barrow,* 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999). "In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter." *State v. Lang,* 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980).

STATE v. KITCHENGS

[183 N.C. App. 369 (2007)]

Defendant argues that the present case is in line with *Barrow*, where the trial court stated that it did not "have the ability to now present to you the transcription of what was said during the course of the trial." *Barrow*, 350 N.C. at 647, 517 S.E.2d at 378 (emphasis omitted). Our Supreme Court concluded that this statement indicated that the trial court failed to exercise its discretion in violation of N.C.G.S. § 15A-1233(a). *Id.* at 647, 517 S.E.2d at 378.

In several cases, our Supreme Court has upheld a trial court's denial of a jury's request to review a transcript. In *State v. Corbett*, 339 N.C. 313, 337, 451 S.E.2d 252, 265 (1994), *cert. denied, Corbett v. McDade*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002), the jury foreman requested that the jury be permitted to " 'see a transcript[.]' " The trial court denied the request, and stated:

"The reason being is unless we had a transcript of the witnesses for you . . . to read, it wouldn't be fair to, say, take part of the state's witnesses and part of the defense witnesses and not give it all to you, and all of you, all 12 of you together, have heard all of the evidence in this case. As I stated to you, your job is to weed through this evidence, assign weight to it and also to determine from your joint and collective recollections of the evidence, determine what the facts are. You deliberate with a view to reaching a verdict if it can be done without the surrender of an honest conviction, and that's what we're asking you to do, as best you can, to remember all the evidence and from that evidence determine what the facts are and render a verdict based upon your deliberations and the law as I have given it to you. I will not give you a transcript of any one witness, and I don't have the wherewithal or the facilities to give you a transcript of this entire trial."

*Id.* The Supreme Court held that "[i]n instructing the jury to rely upon their individual recollections to arrive at a verdict, the trial court exercised its discretion and complied with the requirements of N.C.G.S. § 15A-1233(a)." *Id.* at 338, 451 S.E.2d at 265.

Additionally, in *State v. Lawrence*, the Supreme Court distinguished *Barrow* and upheld the trial court's denial of a jury request for the transcript of the testimony of a witness for the State. 352 N.C. 1, 26-27, 530 S.E.2d 807, 823-24 (2000), *cert. denied, Lawrence v. North Carolina*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001). In *Lawrence*, in response to the jury's request, the trial court simply stated " 'members of the jury, it is your duty to recall the evidence as the evidence was presented. So you may retire and resume your deliberation.' " *Id.*

at 27, 530 S.E.2d at 824. The Supreme Court concluded that "the trial [court] did not impermissibly deny the request based solely on the unavailability of the transcript. . . . Instead, the trial [court] plainly exercised [its] discretion in denying the jury's request." *Id.* at 27-28, 530 S.E.2d at 824 (internal citations omitted).

We conclude that in the present case the trial court exercised its discretion when determining whether to provide the jury with a transcript. First, the record reveals that the trial court consulted with the court reporter after receiving the jury's request. If, as Defendant contends, the trial court had erroneously believed it had no ability to grant the jury's request, then it would not have consulted with the court reporter. Second, the trial court's remarks support our conclusion that the trial court exercised its discretion. The trial court specifically stated to the jury that it was "not going to provide [the jury] with a transcript." The trial court also stated it was "unable to comply with [the jury's] request because of the time constraints associated with typing and printing an actual transcript." We find that the language of the first statement, taken in context with the language of the second statement, does not indicate a belief on the part of the trial court that it could not provide a transcript, but rather, that it was choosing not do so. As in *Corbett* and *Lawrence*, we overrule this assignment of error.

[3] In his last argument, Defendant contends the State improperly questioned Deputy Carr regarding Defendant's prior encounters with police. Defendant challenges two sets of testimony. First, Defendant challenges the following exchange between the State and Deputy Carr:

> [State]: When [T.M.] said Michael . . ., were you aware who she was talking about?
>
> [Deputy Carr]: Yes, sir.
>
> [State]: How did you know who she was talking about?
>
> [Deputy Carr]: I had previous encounters with him.

We note that Defendant did not object to this testimony at trial. We therefore review this challenged testimony for plain error pursuant to N.C.R. App. P. 10(c)(4). "Before granting a new trial to a defendant under the plain error rule or standard, the appellate court must be convinced that absent the alleged error, the jury probably would have reached a different verdict." *State v. Mitchell*, 328 N.C. 705, 711, 403

S.E.2d 287, 290 (1991). Deputy Carr's answer does not specify the context in which the "previous encounters" with Defendant took place. Further, to survive a defendant's motion to dismiss, the State must present substantial evidence of "each essential element of the crime charged and that [the] defendant was the perpetrator[.]" *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004), *cert. denied, Morgan v. North Carolina*, 546 U.S. 830, 163 L. Ed. 2d 79 (2005). Therefore, the State was required to show that Defendant was the perpetrator, and that T.M. had identified Defendant to Deputy Carr. We do not find this testimony to amount to plain error.

Defendant also challenges the following testimony:

[State]: How did you identify [Defendant] as Leslie Michael Kitchengs?

[Deputy Carr]:  I had a picture of him from a previous photo that our courthouse had.

[Defendant]:  Objection.

[Trial court]: I'll sustain that and direct the jurors to disregard that last observation of the witness.

Our Supreme Court has held that "[w]hen the trial court sustains a defendant's objections to improper questions and instructs the jury to disregard such questions, any possible prejudice to the defendant is cured." *State v. Knight*, 340 N.C. 531, 564, 459 S.E.2d 481, 501 (1995). Further, "[a] defendant is entitled to a new trial on the basis of an improper question only if there is a reasonable possibility that the improper question affected the outcome of [the] trial." *State v. Williams*, 350 N.C. 1, 23-24, 510 S.E.2d 626, 641 (1999). Based on the trial court's curative instruction, and Defendant's testimony that he had been convicted of "traffic violations [and] misdemeanor assaults[,]" we are unable to conclude that Defendant must be granted a new trial.

No error.

Judges CALABRIA and STEPHENS concur.