IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-743

Filed: 1 December 2020

Union County, No. 17CRS51771-72

STATE OF NORTH CAROLINA

v.

CARMELO LOPEZ, Defendant.

Appeal by defendant from judgments entered on or about 22 January 2019 by Judge Jeffery K. Carpenter in Superior Court, Union County. Heard in the Court of Appeals 3 March 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Jennifer T. Harrod, for the State.*

*W. Michael Spivey, for defendant-appellant.*

STROUD, Judge

Defendant appeals his convictions for two counts of first degree statutory sexual offense and two counts of taking an indecent liberty with a child. Defendant contends the trial court erred in two evidentiary issues: not allowing evidence of the immigration status of a witness and allowing evidence that he refused a medical test; defendant also contends the trial court erred in denying his motion to dismiss. For the following reasons, we conclude there was no error.

I.      Background

The State's evidence showed that in 2016 defendant invited his girlfriend and her then approximately six-year old daughter, Jane,[1] to move in with him. Due to Jane's mother's work schedule, defendant was alone with Jane at night, and on multiple occasions she said he would take off her pants and "do bad stuff to me." Defendant used "[h]is hands and his tongue" to "touch[ Jane] in the place that [she] go[es] pee[.]" Defendant would touch "with his fingers" "in the inside" of "the place where [she go[es] pee[.]" Defendant would also touch "inside" "where [she] pee[d]" "with his tongue[.]"

Jane told her mother defendant "did something bad to [her]." Jane's mother confronted defendant; he originally denied the allegations but then asked her "not to charge him" and said "he had a lot of money in Mexico and he could give [her] whatever [she] needed." Soon after, Jane developed a rash "where [she] go[es] pee" that burned when she urinated. Jane's mother took Jane to the doctor, and she was diagnosed with genital herpes. Jane's mother was tested for genital herpes; she requested defendant also get tested, but he refused. A search warrant was then executed requiring defendant get tested; he tested positive.

A jury found defendant guilty of two counts of first degree statutory sexual offense and two counts of taking an indecent liberty with a child. The trial court entered judgment on the two counts of statutory sexual offense and arrested

---

[1] A pseudonym is used to protect the identity of the minor involved.

judgment on the two counts of taking an indecent liberty with a child. Defendant

appeals.

## II.    Admission of Evidence

Defendant makes two arguments contending the trial court erred in the

admission of evidence.

A.    Standard of Review

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the abuse of discretion standard which applies to rulings made pursuant to Rule 403.
>
> Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. N.C. Gen. Stat. § 8C–1, Rule 401 (2013). Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

*State v. Blakney*, 233 N.C. App. 516, 520–21, 756 S.E.2d 844, 847–48 (2014) (citations quotation marks, and brackets omitted). "We review a trial court's Rule 403 determination for an abuse of discretion. An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Baldwin*, 240 N.C. App. 413, 418, 770 S.E.2d 167, 171 (2015) (citations and quotation marks omitted).

B.      Evidence Regarding Immigration Status of Jane's Mother

Defendant contends the trial court erred in not allowing him to cross-examine Jane's mother regarding her immigration status. Defendant's argument at trial was that by alleging her daughter was a victim of a crime, Jane's mother could apply for a U Visa.[2] While defendant frames this as a "cross-examination" issue, the trial court allowed defendant to make an extensive proffer of Jane's mother's immigration status, and ultimately ruled the evidence was irrelevant; thus we address the actual legal issue before us, the relevancy of Jane's mother's immigration status.

The State's attorney noted how far afield the questions had wandered and summarized Jane's mother's testimony during *voir dire* that she

> stated that she and the Defendant at no time discussed her
> applying for a Visa in this case. She has not applied for a
> Visa in this case. I can as an officer of the Court tell you

---

[2] "The U nonimmigrant status (U visa) is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." https://www.uscis.gov/humanitarian/victims-human-trafficking-and-other-crimes/victims-criminal-activity-u-nonimmigrant-status (last visited 1 July 2020).

that she has not applied for a Visa with our office as a victim in this case because I would have been consulted about it.

The discussion continued:

> THE COURT:     She's the parent of the victim. She's not the victim.
>
> [State's Attorney]:      Correct, your Honor.  She can't apply.  She can't apply under the law for U Visa, so she can't make application.  I understand that [defendant's attorney] feels like this goes to the credibility of the witness.  I don't understand how [Jane's] immigration status or [Jane's mother's] status in light of the fact that no application has been filed and that they did not discuss it in reference to this case, how that therefore allows for [defendant's attorney] to parade [Jane's mother's] immigration status in front of the jury.  She's already insinuated it to the jury.  I don't get to parade the fact that Mr. Lopez is here illegally and that despite whatever happens with this case he's getting deported, I don't get to say that in front of the jury.  She can ask questions that goes to credibility as it goes to this case, have you applied for a Visa, did you ever talk to Mr. Lopez about applying for a Visa in this case, but she has not provided enough for those issues to go in front of the jury.  It is irrelevant, all of the questions about applying for marriage licenses and all of that.  It's not relevant whatsoever to this case.

The trial court then asked defendant's attorney about the relevancy of the information she was seeking:  "[W]hat does the information that you're seeking to elicit, what are facts of consequence does it make more or less probable?"  Defendant's attorney responded simply, "Well, whether or not any sexual abuse actually occurred."  The trial court then excluded the immigration status evidence under Rule

of Evidence 401 and 403. Defendant now contends he had a right to question Jane's mother about her immigration status because "she may have had a motive to instigate, encourage, coach, or embellish allegations of abuse to avoid possible deportation because she was an illegal immigrant."

We agree with the trial court's ruling on relevancy of the evidence and disagree with defendant's assertions that Jane's mother's immigration status "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[;]" the fact here being "whether or not any sexual abuse actually occurred." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). Defendant has not demonstrated how fabricating sexual abuse would allow Jane's mother "to avoid possible deportation because she was an illegal immigrant[,]" particularly in light of the fact that Jane's mother had not applied for the U Visa defendant was claiming as the motive for the lie.

Defendant focuses his argument to this Court on the importance of being able to question a witness's credibility and bias. We note that to the extent defendant wanted to question Jane's mother about fabricating the sexual abuse or to attack her credibility, he was free to do so; the only prohibition was information regarding her immigration status. Accordingly, we overrule this argument. Because Jane's mother's immigration status was not relevant, we need not address defendant's

argument regarding Rule 403. *See generally* N.C. Gen. Stat. § 8C-1, Rule 403 (2017) (noting relevancy as a precursor to other considerations of exclusion).

C.      Evidence Regarding Testing for Herpes

During defendant's trial there was much discussion regarding whether evidence of defendant's positive herpes test, taken after being arrested, should be admitted as evidence to the jury. As to the issue on appeal, the trial court allowed Jane's mother to testify that she asked defendant to be tested after Jane had tested positive for herpes, and he refused to be tested. Later, a search warrant was executed to test defendant for herpes; that test was positive, but it did not distinguish whether defendant had the same type of herpes, Type 1 or Type 2, that Jane had. The State sought to present evidence of defendant's positive herpes test, but the trial court excluded that evidence based on Rule 403 because the positive test results did not show that the type of herpes was the same as that which infected Jane. Again, "[w]e review a trial court's Rule 403 determination for an abuse of discretion. An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Baldwin*, 240 N.C. App. at 418, 770 S.E.2d at 171.

Defendant contends that "the trial court erred by admitting evidence that . . . [defendant] would not submit to testing for herpes after it excluded the results of any test upon . . . [defendant] because the danger of unfair prejudice substantially

7

outweighed the probative value of the evidence." (Original in all caps.) Defendant does not contest the relevance of Jane's mother's testimony under Rule 401 regarding her request that defendant be tested but only contends that it was unfairly prejudicial. Beyond stating general law regarding Rule 403 and the admission of evidence, defendant cites no law supporting his contention of error by the trial court.

Defendant's general contention is that "[t]he State's case rested heavily upon convincing the jury that [Jane] must have been infected with herpes by Mr. Lopez." If the State intended for its case to rest heavily on this fact, the trial court's exclusion of the results of defendant's herpes test frustrated that intent. Defendant's objections to evidence of the test results were sustained. The trial court did not allow the State to present evidence regarding defendant's test results. But over the defendant's objection, the jury heard evidence of defendant's refusal to be tested upon Jane's mother's request. Even if the trial court had sustained defendant's objections and not allowed the contested testimony, the jury would still have been in the same position. There was evidence that Jane had herpes but there would be no evidence as to whether defendant was ever tested or what the results of that test were – since defendant successfully objected to the State's proffered evidence that he was later tested and the type of herpes was unknown.

The *only* information that Jane's mother actually provided is that defendant refused to be tested, and we do not deem that to be unfairly prejudicial or otherwise

prohibited under Rule 403. *See id.* N.C. Gen. Stat. § 8C-1, Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). The trial court did not abuse its discretion in overruling defendant's objection to this evidence. This argument is overruled.

### III.    Motion to Dismiss

Last, defendant contends the trial court erred when it denied his motion to dismiss one of the charges of first degree statutory sexual offense due to the insufficiency of the evidence. Defendant challenges only the statutory sexual offense convictions based on penetration with his fingers; he does not challenge the conviction of statutory sexual offense based on cunnilingus or the two convictions for taking an indecent liberty with a child.

> The proper standard of review on a motion to dismiss based on insufficiency of the evidence is the substantial evidence test. The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If there is substantial evidence of each element of the charged offense, the motion should be denied.

*State v. Key*, 182 N.C. App. 624, 628-29, 643 S.E.2d 444, 448 (2007) (citations and quotation marks omitted). "When ruling on a motion to dismiss for insufficient

evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009).

"A person is guilty of first-degree statutory sexual offense if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat. § 14-27.29(a) (2017). A "sexual act" for purposes of this conviction "means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen. Stat. § 14-27.20(4) (2017). In *State v. Bellamy*, this Court determined that the standard of proving penetration for a sexual offense was the same as that of rape: "evidence that the defendant entered the labia is sufficient to prove the element of penetration." 172 N.C. App. 649, 658, 617 S.E.2d 81, 88 (2005) ("Our Supreme Court has held that in the context of rape, evidence that the defendant entered the labia is sufficient to prove the element of penetration. We find no reason to establish a different standard for sexual offense." (citation omitted)).

Defendant compares his case to two others where the evidence of penetration was found to be insufficient. *See State v. Hicks*, 319 N.C. 84, 352 S.E.2d 424 (1987)*; State v. Whittenmore*, 255 N.C. 583, 122 S.E.2d 396 (1961). In *Hicks*, the witness provided "ambiguous testimony that defendant 'put his penis in the back of me.'" 319 N.C. at 90, 352 S.E.2d at 427. In *Whittemore*, the witness testified,

He then told me to pull off my pants[.]  I pulled my pants below [m]y knees.  After I pulled my panties down below my knees, he put his privates against mine.  He was laying on his back and made me lay down on him.  I stayed inside the house about two or three minutes before he told me to pull my panties down.  After he went in the house, he pulled his trousers off of one leg and laid down flat on his back on the floor. He made me put my hands on his privates and he put his hand on my privates.  He kept it there about two or three minutes; he just left it there.  After he had done that for two or three minutes, he put his mouth on my breast and after that he put it on my privates and kept his mouth there about one or two minutes.  He just left it there[.]  He had his privates at my privates rubbing it up and down.  I said at.  He did that about one or two minutes[.]

255 N.C. at 586, 122 S.E.2d at 398 (asterisks omitted).  We conclude *Whittenmore* and *Hicks* are inapposite.

Here, Jane testified that defendant touched her with his fingers "in the inside" in "the place where [she] go[es] pee[.]"  Jane testified,

You said that [defendant] would touch you with his hands.  What part of his hand would [defendant] touch you with?

A    His fingers.

Q    And what did Carmelo do with his fingers when he would touch you?  Did he move his fingers at all when he would touch you?

A    Yes.

Q    Okay. And how would he move his fingers when he touched you?  Do you think you could show me what he did with his fingers?  If you like held your fingers up in the air, do you think you could show me what he did

11

with his fingers?  If you don't think you can, you can tell me that.  That's okay.  [Jane], I'm going to ask you a different question.  Okay?

A      Okay.

Q      Do you know that the place where you go pee has an inside and an outside?

A      Yes.

Q      When Carmelo would touch you with his fingers, would he touch you on the inside or on the outside?

A      I think in the inside.

Q      Okay.  Did that hurt?  How did it feel?

A      It felt really bad.

Jane's statements are not like in *Hicks* wherein it is unclear where exactly the defendant put his penis on the witness's private parts, and *Whittenmore* where it is unclear what exactly defendant did to the witness's private parts.  *See Hicks*, 319 N.C. at 90, 352 S.E.2d at 427; *Whittenmore*, 255 N.C. at 586, 122 S.E.2d at 398.  As this Court has previously noted,

> a prosecuting witness is not required to use any particular form of words to indicate that penetration occurred.  While we encourage the State to clarify the testimony of a witness, we note the tendency of our appellate courts to permit a wide range of testimony to indicate penetration.  Our standard of review requires us to view the evidence in the light most favorable to the State[.]

12

*State v. Kitchengs*, 183 N.C. App. 369, 375–76, 645 S.E.2d 166, 171 (2007) (citations omitted).

Our Supreme Court has noted that young children often do not use technically correct terminology to refer to their body parts, but if the meaning is clear, the evidence may be sufficient to prove the elements of the crime. *See generally State v. Rogers*, 322 N.C. 102, 105, 366 S.E.2d 474, 476 (1988).

> Although the victim did not use the word "vagina," or "genital area," when describing the sexual assault perpetrated upon her, she did employ words commonly used by females of tender years to describe these areas of their bodies, of which they are just becoming aware. Other cases have come before this Court in which young children have used words similar or identical to those used by the victim to describe the male and female sex organs, and the children's testimony was found to be sufficient to prove the essential elements of a sexual offense. *See, e.g., State v. Griffin*, 319 N.C. 429, 355 S.E.2d 474 (1987) (nine-year-old victim testified defendant touched her on her "private parts"); *State v. Watkins*, 318 N.C. 498, 349 S.E.2d 564 (1986) (seven-year-old victim testified defendant placed his finger in her "coodie cat" and used dolls to indicate the vaginal area); *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985) (four-year-old victim testified defendant touched her "project" with his "worm" and pointed to her vaginal area).

*Id.* Here, Jane testified that defendant touched her "inside" the place where she goes pee; this testimony alone is sufficient evidence of a sexual act and thereby of a sexual offense, and thus we need not address the other corroborating evidence. This argument is overruled.

## IV. Conclusion

13

We conclude the defendant received a fair trial, free of error based upon the issues presented on appeal.

NO ERROR.

Judges BRYANT concurs.

Judge MURPHY concurs in the result only with separate opinion.

MURPHY, Judge, concurring in result only.

### A. Immigration Status of Jane's Mother

I concur in result only with part II-B of the Majority, as the trial court correctly found the evidence irrelevant based on the lack of information presented to the trial court and on appeal to support the availability of a U-Visa to mother, but write separately to address the more general issue of the relevance of immigration status in this situation.

At trial, Defendant attempted to cross-examine Jane's mother regarding her immigration status and knowledge of U-Visas, which permit an undocumented immigrant to gain legal status if they are a victim of a crime, among other requirements. *See* 8 U.S.C. § 1101(a)(15)(U) (2019). After the State objected, the trial court permitted a voir dire proffer of testimony from Jane's mother, which in relevant part included:

> [DEFENDANT:] So you are aware that there is a Visa that's available to somebody who is a victim of a crime?
>
> [Jane's mother:] Yes.
>
> . . .
>
> [DEFENDANT:] Is [Jane] a citizen of the United States?
>
> [Jane's mother:] Yes.

[DEFENDANT:] And you are not a documented -- you do not have documentation to be in this country; correct?

[Jane's mother:] Exactly.

[DEFENDANT:] Do you worry about being separated from [Jane] because of your status?

[Jane's mother:] Of course I do.

[DEFENDANT:] Is that something that you think about every day?

[Jane's mother:] Of course.

[DEFENDANT:] And if you were able to apply for a Visa, then you would be able to stay legally in this country; correct?

[Jane's mother:] Of course.

[DEFENDANT:] And then you would not have to worry about being separated from [Jane]; correct?

[Jane's mother:] Exactly

Following this proffer of evidence, Defendant argued:

[DEFENDANT]: Your Honor, I believe that this information is relevant in this case of there is the issue of the delayed disclosure. And one reason why there could be a delayed disclosure is due to coaching. And some of the information that was provided by the mother could be motivation for coaching [Jane] about what to say. And it also goes to the credibility of the witness.

The State then asked if Jane's mother had "applied for a Visa because [Jane] was a victim of [Defendant]," to which she replied "[n]o." There was the following discussion of the relevance of the proffered testimony:

*Murphy, J., concurring in result only.*

THE COURT: [Defendant], what does the information that you're seeking to elicit, what are [sic] facts of consequence does it make more or less probable?

[DEFENDANT]: Well, whether or not any sexual abuse actually occurred.

THE COURT: Well, she's not the testifying witness in regards to that. If you wanted to use that in regards to [Jane's] testimony, maybe, maybe you're on a better track but -- of [Jane] -- if in fact the evidence is to be believed by the jury, [Jane] would be the victim. This is the parent of the victim. There is a long bridge to cross to get to the point to where [Jane's mother] has created a situation, coached the victim. I just don't have information at this point to get to that conclusion. It may be something that you in your case in chief you may can explore in order to -- motive to create a story on behalf of [Jane's mother].

Regardless under Rule 401 whether the evidence is relevant or not, the issue is whether or not [Defendant] committed first degree sexual offense and indecent liberties with a child. The immigration status will consume all the oxygen in the room and we will end up with an impromptu exploration, basically a Discovery session in regards to probably exploring the feelings of the prospective jurors as they might relate to the legal status of folks. I don't think the evidence is relevant at this point under Rule 401. It may become relevant. You may be able to get to that point in your case in chief, but at this point there's not a substantial enough relationship between this evidence that I believe it is relevant to any fact or circumstance or fact of consequence.

But even if it is, in the discretion of the Court the probative value of such evidence is substantially outweighed by the probability that the confusion of issues will mislead the jury in regards to the issues to be determined in this case. So at this point based on Rule 401 I don't believe that the evidence is relevant. But even if it is, if a court of review

> later determines that it is, in my discretion I will exclude
> the evidence under Rule 403 in my discretion. So it may be
> a situation where you can develop that as you go through
> and get the two respective universes of what we're here for
> and the immigration status question together and build a
> bridge and it may not – I don't want to foreclose the
> possibility of that. There is the possibility it can be done.
> At this point I don't have -- they're just too far apart.

Based on the evidence presented by Defendant below, I agree with the trial court's, and Majority's, conclusion the evidence was not yet relevant. *Supra* at 6. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2019). For Jane's mother's immigration status and knowledge of U-Visas to be relevant, such information must have had a tendency to make it more likely Jane or her mother fabricated the sexual assault and her mother coached Jane to testify falsely. To do this, Defendant must have presented some evidence Jane's mother was aware of the possible availability of the U-Visa to her before reporting the alleged assault or, since credibility is for the jury, shown the U-Visa was in fact available to her.

Defendant did not present such evidence or legal authority below or on appeal. At most, Defendant presented evidence that Jane's mother was aware U-Visas are available to *victims* of crimes; however, the victim of the crime, Jane, was already a United States citizen. There is no indication from the evidence at trial, the Record

on appeal, or any legal argument made, that a U-Visa could be available to Jane's mother or that Jane's mother believed it was available to her. As a result, Jane's mother's immigration status and knowledge of the availability of U-Visas to *victims* did not have any tendency to make it more or less likely that the sexual assault did or did not occur. Since this evidence was not relevant as presented below and in this appeal, it was properly excluded by the trial court under Rule 402. *See* N.C.G.S. § 8C-1, Rule 402 (2019) ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible.").

While there is an argument to be made that a U-Visa could be available to Jane's mother as an indirect victim of a crime,[3] Defendant has failed to present any such argument to the trial court or on appeal.

> The function of all briefs required or permitted by these
> rules is to define clearly the issues presented to the

---

[3] To be eligible for a U-Visa, 8 U.S.C. § 1101(a)(15)(U) requires, among other things, "the alien [to have] suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii)." 8 U.S.C. § 1101(a)(15)(U)(i)(I) (2019). The meaning of "victim of criminal activity" is clarified by 8 C.F.R. § 214.14(a)(14)(i), which states, "[t]he alien spouse, children under 21 years of age and, if the direct victim is under 21 years of age, parents and unmarried siblings under 18 years of age, will be considered victims of qualifying criminal activity where the direct victim is deceased due to murder or manslaughter, or is incompetent or incapacitated, and therefore unable to provide information concerning the criminal activity or be helpful in the investigation or prosecution of the criminal activity." 8 C.F.R. § 214.14(a)(14)(i) (2020). Read together, there is a meritorious argument that, as indirect victims, certain family members of young victims of crime can petition for a U-Visa if they satisfy all elements of 8 U.S.C. § 1101(a)(15)(U). *See, e.g.,* Elizabeth M. McCormick, *Rethinking Indirect Victim Eligibility for U Non-Immigrant Visas to Better Protect Immigrant Families and Communities*, 22 Stan. L. & Pol'y Rev. 587, 612-620 (2011) (describing the origins of indirect victims' eligibility for U-Visas).

> reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.

N.C. R. App. P. 28(a). "[I]t is the appellant's burden to show error occurring at the trial court, and it is not the role of this Court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein." *Thompson v. Bass*, 261 N.C. App. 285, 292, 819 S.E.2d 621, 627 (2018), *rev. denied*, 828 S.E.2d 617 (N.C. 2019); *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam) ("It is not the role of the appellate courts . . . to create an appeal for an appellant."). As a result, Defendant's argument is limited to what was preserved at the trial court and presented on appeal, and I do not address the potential eligibility of U-Visas to Jane's mother.

Here, there is no persuasive argument advanced for us to find Jane's mother's immigration status and knowledge of U-Visas were relevant for cross-examination. However, generally when there is proper evidence at trial of the applicability of U-Visas to a witness, or of a witness's belief that she would be eligible for a U-Visa as a result of being the victim of a crime, such evidence would be relevant evidence under Rule 401 that a defendant could cross-examine a witness about to attempt to show a motive to lie or to coach an alleged victim to lie. In such a situation, the evidence would still need to satisfy Rule 403. However, this reasoning is inapplicable where

Defendant failed to present evidence or an argument that would make Jane's mother's immigration status and knowledge of U-Visas relevant.

### B. Defendant's Refusal to Be Tested for Herpes

I concur in result only with part II-C of the Majority as to the evidence regarding Defendant's refusal to be tested for herpes. Defendant argues "[t]he trial court erred by admitting evidence that [Defendant] would not submit to testing for herpes after it excluded the results of any test upon [Defendant] because the danger of unfair prejudice substantially outweighed the probative value of the evidence." In addressing this issue, the Majority states

> [e]ven if the trial court had sustained [D]efendant's objections and not allowed the contested testimony, the jury would still have been in the same position. There was evidence that Jane had herpes but there would be no evidence as to whether [D]efendant was ever tested or what the results of that test were – since [D]efendant successfully objected to the State's proffered evidence that he was later tested and the type of herpes was unknown.

*Supra* at 8. I disagree.

If Jane's mother's testimony regarding Defendant's refusal of her request to be tested for herpes had been excluded, then Defendant would not have been in the same position at trial. This testimony could have been read by the jury to suggest Defendant knew or suspected he had herpes and refused to be tested because he knew it could suggest he had sexually assaulted Jane. In the absence of this testimony, there was no evidence tending to show Defendant had herpes, might have had herpes,

or might have suspected he infected Jane with herpes. If the evidence had been excluded, then Defendant would not have been in the same position at trial. Nonetheless, I agree with the Majority's conclusion the trial court did not abuse its discretion in admitting the evidence under Rule 403. *Supra* at 9.

Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2019). "We review a trial court's Rule 403 determination for an abuse of discretion. . . . An abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Baldwin*, 240 N.C. App. 413, 418, 770 S.E.2d 167, 171 (2015) (internal citations and marks omitted). Defendant only contends the evidence was unfairly prejudicial, so I only address if the testimony's probative value was substantially outweighed by the danger of unfair prejudice. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, on an emotional one." *Id.* (internal marks and alterations omitted). It was not an abuse of discretion to admit Jane's mother's testimony that Defendant refused to be tested for herpes.

*Murphy, J., concurring in result only.*

The evidence had strong probative value because it potentially indicated Defendant's unwillingness to be tested for herpes because he was concerned it would suggest he sexually assaulted Jane. There was no danger of unfair prejudice as the evidence did not improperly suggest Defendant was guilty merely because he might have had herpes; it also focused on Defendant's willingness to discover the source of Jane's herpes. Even if the evidence did present a danger of unfair prejudice, Defendant has not shown any danger of unfair prejudice, much less shown it substantially outweighed any probative value and was an abuse of discretion not to exclude. As a result, I agree with the Majority's conclusion the trial court did not abuse its discretion in admitting evidence of Defendant's unwillingness to be tested for herpes under Rule 403. *Supra* at 9.

### C. Motion to Dismiss

The Majority concludes Jane's testimony was sufficient evidence of penetration, in part relying on caselaw that acknowledges children use different words to describe genital areas. *Supra* at 9-13. I agree with the Majority's analysis and use of such caselaw to the extent Defendant takes issue with Jane's description of where Defendant touched her not using anatomical terms. However, I believe the Majority does not address part of Defendant's argument and I write separately to fully address it. Nonetheless, I agree with the Majority's conclusion there was

sufficient evidence of digital penetration and the cases cited by Defendant are inapposite.

Defendant takes issue with the sufficiency of the evidence presented to prove penetration, arguing Jane's testimony "I think in the inside [of where I go pee]" when describing where Defendant touched her was "uncertain testimony [that] left the jury to rely on speculation and conjecture to decide whether penetration occurred" and "[n]o other substantive evidence addressed whether penetration occurred." Although Defendant initially appears to contend, in part, the description of where Jane was touched was "vague and ambiguous," Defendant clarifies in his reply brief that "[t]he ambiguity in [Jane's] testimony does not arise from the use of prepositions or a child's use of childish descriptive language, but because she was uncertain about whether [Defendant] put his fingers inside her." Therefore, I read Defendant's argument on this issue to be based on Jane's use of "I think" when describing where Defendant touched her.

As the Majority correctly lays out, in reviewing a motion to dismiss based on the insufficiency of the evidence we must determine if "there [was] substantial evidence [] of each essential element of the offense charged, and [] that [the] defendant is the perpetrator of the offense." *State v. Key,* 182 N.C. App. 624, 628-29, 643 S.E.2d 444, 448 (2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 629, 643

S.E.2d at 448. Additionally, on a motion to dismiss for insufficient evidence we view the evidence in the light most favorable to the State. *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009).

> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed. . . . This is true even though the suspicion so aroused by the evidence is strong.

*State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted).

Defendant challenges the sufficiency of the evidence for his conviction of N.C.G.S. § 14-27.29(a), which reads "[a] person is guilty of first-degree statutory sexual offense if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C.G.S. § 14-27.29(a) (2019). Defendant only challenges evidence of a sexual act on appeal, so only this element must be analyzed. N.C. R. App. P. 28 (2019) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). "Sexual act" is defined as "the penetration, however slight, by any object into the genital or anal opening of another person's body." N.C.G.S. § 14-27.20(4) (2019). Our Supreme Court has held ambiguous evidence of penetration cannot withstand a motion to dismiss for insufficient evidence. *See State v. Hicks*, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987) (finding victim's testimony that the defendant "put his penis in the back of me" to be ambiguous and insufficient to show

- 11 -

penetration in the absence of corroborative evidence); *State v. Whittemore,* 255 N.C. 583, 586, 122 S.E.2d 396, 398 (1961) (finding victim's testimony that the defendant "put his privates against mine" and "had his privates at my privates rubbing it up and down" to be insufficient to show penetration on its own).

Here, Jane testified "I think in the inside" when asked if Defendant would "touch [her] with his fingers . . . on the inside or on the outside[.]" As the Majority makes clear, Jane's description of her genital area was sufficient to describe penetration. *Supra* at 11-13. However, still at issue is whether Jane's use of "I think" made this testimony ambiguous evidence of penetration. In order to resolve this issue, it is useful to survey Jane's use of "yes," "no," "I don't know," "I don't remember," and "I think" throughout her testimony.

> [STATE:] Okay. So when you were in kindergarten, did you turn six years old that October?
>
> [JANE:] *I think.*
>
> [STATE:] Okay. Do you remember if you went to the same school that you do now?
>
> [JANE:] *No.*
>
> . . .
>
> [STATE:] Okay. When you were in kindergarten and [Defendant] was a friend of your mom's, did you guys ever live together?
>
> [JANE:] We -- my mom said -- actually [Defendant], he -- I think my mom and [Defendant] had a discussion and then

*Murphy, J., concurring in result only.*

-- then [Defendant] just picked me up and then he said if I wanted him to be my dad and I said *yes*.

. . .

[STATE:] Did anybody else live with you?

[JANE:] *No.*

[STATE:] No?  Where had you lived before you lived with [Defendant] and your mom?

[JANE:] *I don't remember.*

. . .

[STATE:] No. Okay.  When you would go to your grandma's house, [Jane], how would you get home after you went to your grandma's house?

[JANE:] Well, [Defendant] used to pick me up.

[STATE:] Did [Defendant] -- at the beginning of kindergarten when you guys first lived with [Defendant], when you and your mom first lived with [Defendant], did [Defendant] pick you up or did somebody else pick you up?

[JANE:] *I think* [Defendant] picked me up.

. . .

[STATE:] Do you remember if you were awake or you were asleep when your mom would come home?

[JANE:] Awake.

[STATE:] You were awake?

[JANE:] *(Witness nods head affirmatively.)*

[STATE:] Did you go back to sleep when your mom would come home?  Would you go to bed when your mom came home?

[JANE:] *I think so.*

. . .

[STATE:] Okay.  And when this would happen and you were laying on the bed, where was [Defendant]?

[JANE:] *I think* he was taking a shower.

[STATE:] He was taking  a shower?

[JANE:] *(Witness nods head affirmatively.)*

[STATE:] When [Defendant] would touch you in a way that you didn't like, was he in the bedroom with you?

[JANE:] *Yes.*

[STATE:] Okay.  So when you said that he was taking a shower, was that before or after he would touch you, if you remember?

[JANE:] *I don't remember.*

. . .

[STATE:] Do you know that the place where you go pee has an inside and an outside?

[JANE:] *Yes.*

[STATE:] When [Defendant] would touch you with his fingers, would he touch you on the inside or on the outside?

[JANE:] *I think in the inside.*

- 14 -

*Murphy, J., concurring in result only.*

[STATE:] Okay.  Did that hurt?  How did it feel?

[JANE:] It felt really bad.

. . .

[STATE:] And would he touch where you pee with his tongue?  Is that yes?

[JANE:] *Yeah.*

[STATE:] Okay.  When [Defendant] would touch you with his tongue, did he touch you on the inside or on the outside with his tongue?

[JANE:] *Inside.*

[STATE:] And how did that feel?

[JANE:] Bad.

. . .

[STATE:] [Jane], when [Defendant] would do this to you, would you ever say anything to him?  Did you say yes or no?  Do you remember if you ever said anything to him?

[JANE:] *I don't remember.*

[STATE:] Okay.  Do you remember if you ever tried to hit him or fight him off of you?

[JANE:] *I think.*

[STATE:] You think?

[JANE:] *(Witness nods head affirmatively.)*

. . .

[STATE:] Do you remember if [Defendant] ever held you down while he was doing this to you?

[JANE:] *I don't know.*

. . .

[STATE:] Do you remember if you went to the hospital or to see a doctor?

[JANE:] *I think* we first went to see a doctor.

. . .

[STATE:] And did the doctor ask you if anybody had ever touched you?

[JANE:] *I don't remember. . . .*

[STATE:] Did she ask you if anybody had ever touched you?

[JANE:] *I don't remember.*

. . .

[STATE:] And do you remember how many times you went to Treehouse?

[JANE:] Like *I think* ten.

[STATE:] Ten?

[JANE:] *Uh-huh.*

. . .

[STATE:] Okay. [Jane], after your -- did your rash get better after a little while?

[JANE:] *I think so.*

. . .

[STATE:] Okay. And did you tell her about how [Defendant] touched you where you pee with his fingers and with his tongue?

[JANE:] *I think so.*

. . .

[STATE:] Some happy. Did you make more than one happy drawing or just one happy drawing?

[JANE:] *I think* just one happy drawing.

. . .

[STATE:] Do you recognize what this is? Do you recognize what this book is?

[JANE:] *I think so.*

[STATE:] You think so. Is this the book that you sometimes drew in when you were in kindergarten?

[JANE:] *Yes.*

[STATE:] Okay. And is this the book that you drew the sad picture in?

[JANE:] *Yes.*

. . .

[STATE:] And did you know how to draw it, because that's what actually happened?

[JANE:] *Yes.*

*Murphy, J., concurring in result only.*

[STATE:] Okay. Do you remember if you drew that multiple times for your mom?

[JANE:] *I think so.*

. . .

[STATE:] [Jane], the rash that you had, --

[JANE:] *Yes.*

[STATE:] -- do you still get that rash sometimes?

[JANE:] *I don't know.*

[STATE:] You don't know. Does it sometimes still hurt for you to go to the bathroom?

[JANE:] *No.*

. . .

[STATE:] Has anybody else ever put their fingers in the place where you go pee?

[JANE:] *No.*

[STATE:] Has anybody else ever put their mouth in the place where you go pee?

[JANE:] *No. . . .*

[STATE:] No? Okay. [Jane], [Defendant] is the one that did these things to you?

[JANE:] *Yes.*

. . .

> [DEFENDANT:] And did you talk about what happened with [the State's attorney]? [The State's attorney] who just asked you a lot of questions.
>
> [JANE:] *I don't know.*

(Emphasis added).

Defendant contends Jane's use of "I think" when addressing where Defendant touched her "was too vague and ambiguous to permit the jury to do any more than speculate that *maybe* penetration occurred." Although in some situations this argument could have merit, based on the testimony in this case it does not. Based on Jane's testimony, viewed in the light most favorable to the State, her testimony was not "vague and ambiguous" as to whether digital penetration occurred. When looking at the entirety of Jane's testimony, it is clear she used "yes" and "no" according to their normal meanings and she consistently said "I don't know" or "I don't remember" when she was unsure of something or did not know of its truth. Based on her use of language, in the light most favorable to the State she used "I think" as an expression of belief that something occurred, which was weaker than an absolute "yes," but stronger than "I don't know." Although this use of "I think" expresses some doubt, in that it was not an absolute "yes," it was not "vague and ambiguous" evidence that only "permit[s] the jury to . . . speculate that *maybe*" there was penetration, as Defendant contends. Instead, as it was used here, it was evidence that Jane believed Defendant touched her inside, which would constitute penetration.

*Murphy, J., concurring in result only.*

Furthermore, Jane appears to have used "I think" interchangeably with "yes" at times, including in the following testimony:

> [STATE:] Do you recognize what this is? Do you recognize what this book is?
>
> [JANE:] *I think so.*
>
> [STATE:] You think so. Is this the book that you sometimes drew in when you were in kindergarten?
>
> [JANE:] *Yes.*
>
> [STATE:] Okay. And is this the book that you drew the sad picture in?
>
> [JANE:] *Yes.*

(Emphasis added).

Regardless of whether "I think" was used to reflect Jane's belief that Defendant touched her inside of where she goes pee, or used as an equivalent to "yes," Jane's testimony was sufficient evidence of penetration to survive a motion to dismiss. Even if "I think" indicated Jane had some doubt, the testimony does not rise to a level of ambiguity requiring dismissal, like in *Hicks* and *Whittemore*. Instead, Jane testifying "I think in the inside" in response to a question about where Defendant touched her, was such relevant evidence as a reasonable mind might accept as adequate to support a conclusion Defendant did digitally penetrate her.

Furthermore, since this evidence of penetration was not ambiguous, it was appropriately presented to the jury, which determined the meaning of the phrase in

light of the live testimony and how Jane used the phrase throughout her testimony.

Ultimately, if "I think" reflected a lack of confidence, the jury was in the best position

to determine what weight to give her testimony, and in finding Defendant guilty

beyond a reasonable doubt of a sexual offense based on digital penetration the jury

determined Jane's use of "I think" did not indicate uncertainty.

Finally, even if Jane's initial testimony was ambiguous, the following

testimony was subsequently heard:

> [STATE:] Has anybody else ever put their fingers in the place where you go pee?
>
> [JANE:] No.
>
> [STATE:] Has anybody else ever put their mouth in the place where you go pee?
>
> [JANE:] No. . . .
>
> [STATE:] No?  Okay.  [Jane], [Defendant] is the one that did these things to you?
>
> [JANE:] Yes.

Jane testified "yes" in response to a question if Defendant was the only person who

ever "put [his] fingers in the place where [she goes] pee[.]"  This testimony on its own

constitutes unambiguous relevant evidence that a reasonable mind might accept as

adequate to support a conclusion Defendant digitally penetrated Jane.

In summary, throughout her testimony there was a difference in Jane's use of

"yes," "no," "I don't know," "I don't remember," and "I think."  Her use of "I think" here

*Murphy, J., concurring in result only.*

could reflect her belief something occurred with some doubt, or that something affirmatively did occur, but it was not used to indicate complete uncertainty and was not "vague and ambiguous" evidence of penetration, as Defendant contends. As a result, regardless of which of the two possible meanings of "I think" is accurate in how it was used here, in the light most favorable to the State, Jane's testimony that "[she] thinks [Defendant touched her with his fingers] in the inside [of where she goes pee]" was substantial evidence to support digital penetration. Additionally, even if this was ambiguous evidence of penetration that could not have been relied upon by the jury, there was other unambiguous evidence of penetration. The trial court rightly denied the motion to dismiss.